**Earl HUGHES and Tracy Hughes, Plaintiffs,**

v.

**SEGAL ENTERPRISES, INC. d/b/a Segal Manufactured Home Sales, An Arkansas Corporation; Buccaneer Homes Corp. d/b/a Buccaneer Mobile Homes, An Alabama Corporation; Weyerhaeuser Company, A Washington Corporation; Georgia Pacific Corporation, A Georgia Corporation, and John Doe III, Defendants.**

Civ. No. 84–6045.

United States District Court, W.D. Arkansas, Hot Springs Division.

Jan. 27, 1986.

---

John S. Evangelisti, of LaFond & Evangelisti, Denver, Colo., and William W. Green, Hot Springs, Ark., for plaintiffs.

Wayne A. Gruber, Little Rock, Ark., for Segal Enterprises, Inc., d/b/a Segal Manufactured Home Sales.

Mel Sayes, Tom Forest Lovett, P.A., Little Rock, Ark., for Buccaneer Homes Corp. d/b/a Buccaneer Mobile Homes.

Robert K. Walsh, Friday, Eldredge & Clark, Little Rock, Ark., for Georgia Pacific Corp.

Philip M. Clay, Wood, Smith & Schnipper, Hot Springs, Ark., for Weyerhaeuser Co.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

### Introduction

Plaintiffs, Earl Hughes and Tracy Hughes, citizens of the state of Arkansas, initiated this action on March 23, 1984, against defendants Segal, an Arkansas corporation, Buccaneer, an Alabama corporation, and John Does I, II and III, alleging that Earl Hughes purchased from Segal a new mobile home which was manufactured by Buccaneer. Plaintiffs alleged that John Does I, II and III supplied processed wood products to Buccaneer for use in the manufacturing of mobile homes. These processed wood products allegedly contain urea-formaldehyde resin and release formaldehyde gas. Plaintiffs contend that they were harmed by exposure to the formaldehyde fumes and that their mobile home was damaged when Buccaneer fumigated it with ammonia in an effort to remedy the defect.

Plaintiffs alleged various grounds for relief including (1) knowing failure to warn; (2) breach of warranties; (3) strict product liability; and (4) breach of warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.

Plaintiffs claimed damages for pain and suffering, medical expenses, lost wages and earning capacity, lost credit and reputation, and loss of consortium, as well as punitive damages.

After Segal and Buccaneer answered, plaintiffs filed an amended complaint adding a claim for relief under the Consumer Product Safety Act, 15 U.S.C. §§ 2072, 2073 (CPSA). Neither Segal nor Buccaneer objected to the amendment.

With regard to the fourth claim for relief, under the Magnuson-Moss Act, it is alleged that plaintiffs are consumers as defined in the Act, that defendants are manufacturers, suppliers and warrantors pursuant to the language of the Act, that the mobile home is a "consumer product" as defined in the Act, and that the express warranty involved is a "written warranty" under the Act.

In plaintiffs' sixth claim for relief it is alleged that the defendants were required by the CPSA to report instances in which a product failed to comply with a safety rule or has a defect which would create a substantial hazard, but knowingly failed to do so with regard to the wood products containing formaldehyde. Plaintiffs also alleged that defendants failed to comply with section 2064(a) and (b) of the CPSA and that plaintiffs are entitled to recovery under section 2072 of the CPSA.

The remaining claims are the claims based upon state law or cognizable only in state court set forth above.

Segal and Buccaneer then moved to dismiss the fourth and sixth claims for relief. Buccaneer argued that the complaint does not allege a breach of any of the substantive provisions of the Magnuson-Moss Act, but merely alleges a breach of warranties which is not actionable. Buccaneer further alleged that the wood products involved are not "consumer products" under the CPSA, and that any action under the CPSA must be brought where the defendant "resides," must be preceded by notice to the Commission and the Attorney General, and is available only for injunctive relief.

Segal argued that an action for personal injury based upon a breach of warranty is not cognizable under the Magnuson-Moss Act, and that there must be a violation of a substantive provision of the Act resulting in "economic loss" of fifty thousand dollars or more, exclusive of interest and costs, and punitive damages, in order for the Act to be implicated.

With regard to the CPSA, Segal asserted that the wood products are not "consumer products" as defined by the CPSA, and therefore the CPSA is unavailable to the plaintiffs.

In March, 1985, Buccaneer filed "cross"-claims against Georgia Pacific Corporation and Weyerhaeuser Company for contribution and/or indemnity, and requested that they be substituted for John Does I and II as defendants. On April 10, 1985, Judge Harris ordered Georgia Pacific and Weyer-haeuser to be substituted as defendants in place of John Doe I and John Doe II.

Georgia Pacific and Weyerhaeuser Company both moved to dismiss the "cross"-claims, Weyerhaeuser arguing that it is not a co-party and that a cross-claim is therefore inappropriate, and Georgia Pacific arguing that the court lacks subject matter jurisdiction of plaintiffs' claim against Buccaneer and therefore the court lacks jurisdiction over the cross-claim. Weyerhaeuser's motion was denied on September 5, 1985.

Plaintiffs again moved to amend their complaint on September 27, 1985, so as to add Georgia Pacific and Weyerhaeuser as party defendants in place of John Does I and II and clarifying their Magnuson-Moss Act and CPSA claims. All defendants objected to the proposed amendment. Buccaneer contends that the amendment does not cure defects pertaining to the Magnuson-Moss Act claim and that the statute of limitations precludes plaintiffs' amended complaint.

Segal reiterated its argument that the Magnuson-Moss Act is inapplicable and that the court therefore lacks subject matter jurisdiction of plaintiffs' claims because plaintiffs and Segal are citizens of Arkansas and therefore complete diversity under 28 U.S.C. § 1332 is lacking. On December 3, 1985, the court was notified that Segal and the plaintiffs had settled the issues as between them, and Segal has now been dismissed from this action.

Georgia Pacific contends that plaintiffs assert no federal claims against it, that pendent jurisdiction over the state claims is inappropriate, and that the claims are barred by the statute of limitations.

Weyerhaeuser joined the other defendants in opposing the amendment and moved for summary judgment on the asserted grounds that the action is barred by the statute of limitations.

All of the parties have responded, replied, and "re-responded" to the various motions until the court's file is almost unmanageable; nonetheless, the court will at-

tempt to wade through the ever-increasing paper in order to resolve the various claims and contentions of the parties.

Because Buccaneer, Georgia Pacific and Weyerhaeuser all contend that plaintiffs' claims against them are barred by the statute of limitations, the court will first discuss that issue.

### Statute of Limitations

It is not disputed that plaintiffs have contended that Buccaneer fumigated the mobile home with ammonia on April 24, 1982, and that the fumigation caused damage to the home. Assuming that the statute of limitations began running on that date and that a three-year limitations period applies, as Buccaneer, Georgia Pacific and Weyerhaeuser contend, the statute of limitations would have expired on April 24, 1985. Because the cross-claims for contribution and indemnity arising from the same facts as alleged in the complaint were served upon Weyerhaeuser and Georgia Pacific in March, 1985, and because Weyerhaeuser and Georgia Pacific were made party defendants and substituted for John Does I and II by order dated April 10, 1985, the court believes that the statute of limitations is no barrier.

An amendment changing a party relates back when the claim asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth in the original pleading, and within the limitations period the opposing party has received such notice of the action that he will not be prejudiced and knew or should have known that but for a mistake concerning the identity, the action would have been brought against him. Rule 15(c), Fed.R. Civ.P. A primary factor is whether the defendants received adequate notice of the claims against it. *Crowder v. Gordons Transports, Inc.*, 387 F.2d 413 (8th Cir. 1967); *see also Campbell v. Bergeron*, 486 F.Supp. 1246 (M.D.La.1980).

Weyerhauser and Georgia Pacific were not merely served with process within the limitations period, they were substitut-ed as party defendants by Judge Harris' April 10, 1985, order. Thus, the court believes that the urged amendment of the complaint would relate back to a point in time prior to the expiration of the limitations period.

### The Magnuson-Moss Warranty Act Claims

The second amended complaint, insofar as it purports to allege a cause of action under the Magnuson-Moss Act, states that the defendants are "suppliers" and "warrantors" as defined by the Act, that the mobile home is a "consumer product" under the Act, and that the written warranty is a "written warranty" as covered by the Act. *See* sections 2301(1), (4), (5), (6). It is contended that defendants breached express and implied warranties of merchantability and habitability, actionable under section 2310(d)(1), and that the written warranty provided by Buccaneer violated section 2303(a) by not being clearly labeled a "limited" warranty and was defective under section 2304(a)(2) because it limits the duration of implied warranties. Plaintiffs allege that all defendants failed to repair, replace or refund as required by section 2304(a)(4). By making the limitations of duration and liability unclear and inconspicuous, it is argued that defendants violated sections 2302, 2304(a)(2) and 2308.

First, it is well settled that the Act does not require that a seller give a warranty on a consumer product, but if a warranty is given, it must comply with the Act. *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058 (5th Cir.1984). The court assumes for purposes of this discussion that a mobile home is a "consumer product" under the Act. *Federal Trade Comm'n Advisory Opin.* 42 Fed.Reg. 37440, 37441 (1977); *F.T.C. Adv.Opin.*, 40 Fed.Reg. 25721, 25722 (1975).

The provisions of the Act that create a private cause of action allow a consumer to sue a warrantor for (1) a violation of the substantive provisions of the Act, or (2) breach of a written or implied warranty. The Act provides, *inter alia:*

(d)(1) Subject to subsection (a)(3) and (e) of this section, a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—

 (A) in any court of competent jurisdiction in any State or the District of Columbia; or

 (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection.

 . . . .

(3) No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection—

 (A) if the amount in controversy of any individual claim is less than the sum or value of $25;

 (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or

 (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

(e) No action (other than a class action or an action respecting a warranty to which subsection (a)(3) of this section applies) may be brought under subsection (d) of this section for failure to comply with any obligation under any written or implied warranty or service contract . . . unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply. . . .

Section 2310.

Section 2311(b)(2) explicitly precludes the recovery of personal injury damages arising out of a breach of an implied warranty. To date, all of the reported decisions that have faced the issue have held that the Act does not create a federal cause of action for state law personal injury claims for breach of warranty. *See Boelens v. Redman Homes, Inc., supra; Bush v. Ameri-* *can Motors Sales Corp.,* 575 F.Supp. 1581 (D.Colo.1984); *Gorman v. Saf-T-Mate, Inc.,* 513 F.Supp. 1028 (N.D.Ind.1981).

■ Personal injury claims, to be actionable under the Act, must involve a violation of a substantive provision of the Act. Section 2311(b)(2) provides: "Nothing in this chapter (other than sections 2308 and 2304(a)(2) and (4) of this title) shall (A) affect the liability of, or impose liability on, any person for personal injury. . . ." It is generally agreed that the reference to section 2304(a)(4) was a draftsmanship error and that section 2304(a)(3) was intended. *Boelens, supra; Saf-T-Mate, supra.* Thus, where personal injury is involved, a plaintiff must allege a violation of sections 2304(a)(2), (3), or 2308. Section 2304(a)(2) prohibits full warrantors from limiting the duration of implied warranty coverage; section 2304(a)(3) requires that limitations on liability for consequential damages be conspicuously displayed on the warranty; section 2308 forbids disclaimers of implied warranties. If sections 2308 or 2304(a)(2) or (3) are involved, an action for personal injury may be maintained, because section 2311(b)(2) removes such a suit from the reach of that section. As the court in *Boelens* noted, such a suit, however, is an action under section 2310(d)(1) for failure "to comply with any obligation under this chapter," because sections 2308 and 2304 create substantive obligations. It would not be a suit "under a written warranty (or) implied warranty" within the meaning of section 2310(d)(1).

■ The case is different with respect to economic loss. Many cases make clear that damages for economic loss are recoverable under the Act. *In re General Motors Corp. Engine Interchange Litigation,* 594 F.2d 1106 (7th Cir.1979); *Boelens, supra.*

■ In determining whether the amount in controversy requirement is met it is helpful to segregate damages into different categories for jurisdictional purposes. Section 2310(d)(3)(B) provides that no claim is cognizable under the Act unless the amount in controversy is at least $50,-

000. In satisfying this requirement, economic losses may be considered, as well as personal injury damages arising from a breach of sections 2304(a)(2), (3) or 2308. Punitive damages are recoverable under the Act for breach of warranty only if such may be recovered in a breach of warranty action under state law. *Boelens, supra; Saval v. B L Ltd.*, 710 F.2d 1027 (4th Cir.1983).

Plaintiffs seek nearly one million dollars in damages for mental pain, physical pain, future medical expenses, lost wages and earning capacity, lost credit and reputation, and loss of consortium, as well as punitive damages and attorney's fees. Although not mentioned in the amended complaint, plaintiffs purport to be seeking $15,000 in economic loss for the loss in value of the mobile home and replacement housing. Plaintiffs state that they seek $45,000 in punitive damages based upon the economic loss. (See Plaintiffs' Response to Motion to Dismiss Fourth and Sixth Claims for Relief, p. 2). Thus, before the economic loss can satisfy the jurisdictional prerequisite, the punitive damages must be included.

It is a well-settled and long-standing rule in Arkansas that punitive damages are ordinarily not recoverable in a breach of contract action. *Snow v. Grace*, 25 Ark. 570 (1869); *McClellan v. Brown*, 276 Ark. 28, 632 S.W.2d 406 (1982). There is an exception where the evidence demonstrates that there is willful or malicious conduct in relation to the contract. *Delta Rice Mill, Inc. v. General Foods Corp.*, 583 F.Supp. 564 (E.D.Ark.1984). In *Delta Rice* the court held that deliberate ordering of unneeded rice, holding the rice for weeks before rejecting it and using but not paying for the rice while knowing of the plaintiff's financial difficulties did not rise to the level of willfulness, wantonness, malice or conscious indifference, and therefore a punitive damage award was set aside. It is also held that allegations of fraud, without more, do not justify the imposition of punitive damages. *Curtis v. Partain, Judge*, 272 Ark. 400, 614 S.W.2d 671 (1981).

In the amended complaint it is alleged that the defendants knew or should have known that the mobile home and wood products were dangerous and unsafe for human habitation, yet that they were warranted to be safe by Buccaneer, who failed to warn the plaintiffs of the hazardous nature of the mobile home as constructed. Although the court seriously doubts that plaintiffs can prove a case for punitive damages, the allegations that Buccaneer knowingly supplied a dangerous product but falsely warranted it to be safe, failed to warn the plaintiffs, and refused to remedy the defects, appear to constitute a claim based upon willful conduct and conscious indifference to the rights and safety of the plaintiffs. Thus, the court believes that plaintiffs have *alleged* sufficient conduct to warrant the imposition of punitive damages arising from the alleged breach of warranty. However, because the court has diversity jurisdiction over all remaining defendants, this is of minimal importance.

With regard to the claims against Buccaneer, the foregoing discussion pertaining to economic loss also applies. Further, plaintiffs have alleged personal injuries arising from violations of the substantive provisions of the Act, §§ 2304(a)(2), (3) or 2308. Plaintiffs allege that the warranty extended was a "full" warranty and was defective under section 2304(a)(2) because it limits the duration of an implied warranty, was defective under section 2308 because the limitation imposed was unclear, and was defective under section 2304(a)(3) by inconspicuously limiting consequential damages. Buccaneer responds that its only error was the failure to designate the warranty as a "limited" warranty and that, if the warranty is a "limited" warranty, none of the alleged defects are violations of sections 2304(a)(2), (3) or 2308. The failure to designate the warranty as a "limited" warranty is a violation of section 2303(a). However, a violation of section 2303 is not a substantive violation of the Act and will not support a claim for personal injury damages.

In the court's view, Buccaneer is subject to plaintiffs' Magnuson-Moss Act claim for

two reasons: (1) A violation of section 2303(a) will support a claim for economic loss which plaintiff has alleged, *supra,* and (2) the failure to designate the warranty as a "limited" warranty may render it a "full" warranty. Section 2303(a) and 16 C.F.R. § 700.6(a) both require that "full warranty" and "limited warranty" be the exclusive designations permitted.

A "full warranty" requires the warrantor to remedy defects in a product within a reasonable time without charge, prevents a warrantor from limiting the duration of implied warranties, and requires the warrantor to conspicuously place any exclusion or limitation of consequential damages arising from a breach of any written or implied warranty on the face of the warranty. Section 2304(a)(1), (2), (3). If a warranty is a limited warranty, the warrantor is allowed to limit the duration of implied warranties to the duration of a written warranty of reasonable duration if conscionable, set forth in clear language, and prominently displayed on the face of the warranty. Section 2308.

The designation is of great importance in determining whether the warranty is limited or full, otherwise warrantors could simply provide limited warranty protection in a misdesignated warranty, and then argue that the warranty is "limited" and although section 2303 is thereby violated, section 2303 does not provide a cause of action for personal injury damages. To adopt this interpretation would encourage warrantors to mislabel their warranties. One purpose of section 2303 was that:

> [O]ver time these adjectives ("full" and "limited" ) will achieve a fixed meaning in this context in the minds of consumers and they will thus be able to make more intelligent decisions.

White and Summers, U.C.C. (2d ed.) § 9–13 at 371.

By mislabeling warranties, warrantors deliberately confuse the consumer and negate the basis for intelligent decisions.

The fact that the warranty at issue states that it is a limited warranty in the body of the text does not make it so for purposes of section 2303, because Section 2305 allows the selling of a consumer product which has both full and limited warranties if such warranties are clearly and conspicuously differentiated. Therefore, a consumer could reasonably believe that both full and limited warranties are extended, if the warranty is neither labeled "full" nor "limited," and the word "limited" appears only in the body of the text.

 Further, because warranties *must* be designated as either "full" or "limited," a designation which contains neither must be interpreted in a manner most favorable to the consumer. The rule of *contra proferentum* requires that when a required term of a contract is omitted, that term most favorable to the innocent party be supplied by the court, unless the omission renders the contract void. Any reasonable doubt as to the meaning of any provision must be construed in favor of the plaintiff. *Schulte v. Benton Savings and Loan Ass'n,* 279 Ark. 275, 651 S.W.2d 71 (1983). Unless the warranty was clearly understood by the plaintiffs to be a limited warranty, that interpretation of the document most favorable to the plaintiffs must apply. Confusion in the mind of the consumer caused by a warrantor's knowing violation of section 2303 cannot operate to the benefit of the warrantor to the detriment of the consumer who played no part in the drafting of the document. Any other interpretation would effectively "gut" the purpose of section 2303. Thus, Buccaneer's mislabeling of the warranty is not a mere violation of section 2303, it is also a potential violation of sections 2304(a)(2), (3) and 2308.

The court concludes that plaintiffs have stated a valid claim against defendant Buccaneer under the Magnuson-Moss Act.

### *The Consumer Product Safety Act Claims*

With regard to plaintiffs' claims under the CPSA, 15 U.S.C. § 2052 *et seq.,* it is alleged that the defendants were required to report any instances in which a product

**1240**

fails to comply with a safety rule or has a defect which would create a substantial hazard to the Commission. It is alleged that the formaldehyde products involved in this action had a defect which created a substantial hazard and that defendants failed to report that fact. Plaintiff alleges entitlement to relief under sections 2072, 2064(a) and (b).

Defendant Buccaneer argues that a mobile home is not a "consumer product" as defined in section 2052(a)(1)(B), and therefore the CPSA is inapplicable. Buccaneer additionally asserts that actions against it under section 2072 must be brought in the district where it "resides," and because it is an Alabama corporation, the action must be brought in Alabama.

The articles at issue are particle boards and shelving materials installed by Buccaneer in the mobile home. In *Consumer Product Safety Commission v. Anaconda Co.*, 593 F.2d 1314 (D.C.Cir. 1979), the court stated that the test is whether the article is a distinct article of commerce customarily bought separately by the consumer, even if it is also bought by industry. *CPSC Advisory Opinion No. 30* (Aug. 31, 1973) states that although the design and construction of mobile homes are outside of the scope of the Act, all appliances or appurtenances of household environments are covered by the Act. It is the structure of mobile homes that is excluded; however, components, equipment and appliances sold with or used in or around a mobile home are covered. *CPSC Advisory Opinion No. 112* (May 17, 1974). Thus, the court concludes that the products at issue are covered by the Act.

Suits for damages are authorized by sections 2072 and 2073. Section 2072 provides a private cause of action to "any person who shall sustain injury by reason of any knowing (including willful) violation *of a consumer product safety rule, or any other rule or order issued by the Commission....*" Section 2073 allows "any interested person ..." to "bring an action ... to enforce a consumer product safety rule or an order under (§ 2064), and to obtain

appropriate injunctive relief...." Actions under section 2073 must be preceded by 30 days' notice to the party, the Attorney General and the Commission.

Plaintiffs allege a violation of section 2064 which requires manufacturers, distributors and retailers of consumer products who obtain information which reasonably supports the conclusion that such product fails to comply with an applicable consumer product safety rule or contains a defect which could create a substantial product hazard to inform the Commission of the failure to comply or of the defect.

The problem is that section 2072 does not authorize suits based upon allegations that a product contains a substantial product hazard. It allows suits based upon knowing violations of safety rules or any rule or order of the Commission.

This requirement is met, however, it was not brought to the attention of the court. The rule is 16 C.F.R. § 1115 which, although not a "consumer product safety rule," is a "rule" as used in section 2072. This conclusion was adopted in *Butcher v. Robertshaw Controls Co.*, 550 F.Supp. 692 (D.Md.1981). Thus, section 2072 is available to the plaintiffs as a basis for suit. Plaintiffs have not pled that the notice required by section 2073 was given. Just as notice of a breach of warranty is an essential allegation under state law, *L.A. Green Seed Co. of Arkansas v. Williams*, 246 Ark. 463, 438 S.W.2d 717 (1969), the court believes that the notice required by section 2073 is an essential element of a claim arising under that section and must be pled and proved. Because this defect is not "cured" by the amended complaint, the claims arising under section 2073 will be dismissed.

Buccaneer's contention that it is subject to suit under section 2072 only in Alabama is unavailing. Section 2072 states that suit may be brought "in the district in which the defendant resides or is found or has an agent...." The court believes that Buccaneer is "found" in any state in which it would be subject to the personal jurisdic-

tion of the courts of that state. Buccaneer has waived any defense of lack of personal jurisdiction by not raising the same, Rule 12(g), and the court believes that Buccaneer can be "found" in Arkansas. Therefore, the court concludes that plaintiffs have stated a claim against Buccaneer under the CPSA.

Plaintiffs, via the proposed second amended complaint, seek to assert claims against Weyerhaeuser and Georgia Pacific arising under the CPSA. Because, as indicated above, the statute of limitations is no bar to such action, the amendment should be allowed if it states a cognizable claim against these defendants and if they will not be prejudiced thereby.

Georgia Pacific and Weyerhaeuser will not be prejudiced because they were brought into the action by cross-claim long ago and their defenses to the cross-claims will be substantially similar to the defenses necessarily involved in plaintiffs' claims.

Further, because Georgia Pacific and Weyerhaeuser are manufacturers, distributors, or retailers of the processed wood products, who allegedly knew of the asserted substantial products hazard, both are subject to suit under section 2072 of the CPSA, no objection to personal jurisdiction having been made.

 The court concludes that the second amendment to the complaint, asserting CPSA claims under section 2072 against Georgia Pacific and Weyerhaeuser should be allowed. However, because it is not alleged that either Georgia Pacific or Weyerhaeuser "actually made" a written warranty, within the meaning of section 2310(f), plaintiffs will not be allowed to assert claims against Georgia Pacific and Weyerhaeuser arising under the Magnuson-Moss Act.

The foregoing discussion indicates that plaintiffs may properly assert Magnuson-Moss Act claims against defendant Buccaneer, and may assert claims against all remaining defendants under section 2072 of the Consumer Product Safety Act. Diversity jurisdiction is present over all defendants because Segal has been dismissed from the action.

Although Georgia Pacific argues that diversity jurisdiction is unavailable because diversity is to be determined as of the time of filing the complaint, it is well-settled that the lack of diversity jurisdiction is no bar where a plaintiff has an independent basis for jurisdiction over the defendants. Wright, Miller & Cooper, *Federal Practice and Procedure* § 3605 at 400.

Therefore, plaintiffs may assert their state claims and claims normally cognizable only in state court against the remaining defendants. There is no jurisdictional bar to any of the claims allowed by the court.

A separate order in accordance with the foregoing will be concurrently entered.