**Ronald ZEPIK, Plaintiff–Appellant,**

**v.**

**TIDEWATER MIDWEST, INC., et al.,
Defendants–Appellees.**

No. 87–3021.

United States Court of Appeals,
Seventh Circuit.

Argued April 15, 1988.

Decided Sept. 12, 1988.

Law Office, Louisville, Ky., for plaintiff-appellant.

Kathleen M. Maicher, Spangler, Jennings, Spangler & Dougherty, P.C., Valparaiso, Ind., James K. Whitaker, James K. Whitaker & Assoc., Hammond, Ind., James H. Pankow, Jones, Obenchain, Ford, Pankow & Lewis, Peter J. Agostino, Kalamaros & Assoc., P.C., South Bend, Ind., for defendants-appellees.

Before WOOD, Jr. and CUDAHY, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

CUDAHY, Circuit Judge.

Ronald Zepik was injured while diving into an in-ground swimming pool at the home of some friends. He brought suit in federal court against four manufacturers of swimming pool components and a pool supply company raising claims based on the Consumer Products Safety Act ("CPSA") and on a variety of pendent state law theories, including strict liability, negligence, willful and wanton misconduct and breach of express and implied warranties. Zepik's complaint based subject matter jurisdiction solely on the federal question raised by the CPSA claim.

The district court dismissed the suit against the supplier and granted summary judgment on all counts in favor of the component manufacturers; Zepik appealed. We affirm the district court's rejection of the CPSA claim and remand the state claims for the district court to determine whether federal jurisdiction of the pendent claims exists under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

I.

We summarize the relevant facts with all disputed issues resolved in Zepik's favor. On June 20, 1983, Ronald Zepik dove into a backyard swimming pool at the home of his friends, the Davises, and struck his head on the bottom. The accident left him a quadriplegic. In May 1985, Zepik brought suit against five companies that had manufac-

Ronald R. Gilbert, Ronald R. Gilbert, P.C., Detroit, Mich., Gary Becker, Becker

tured or sold components incorporated in the Davises' pool. Claims against Ceeco Pool & Supply, Inc. (later known as Tidewater Midwest, Inc.) were dismissed with prejudice and that company plays no part in this appeal. Another company, Loren's Pool and Supply, Inc. ("Loren's"), sold materials used in constructing the pool, excavated the hole and provided technical assistance. The remaining three were identified by Zepik as component manufacturers: Frost Company ("Frost") manufactured the ladder; Pleasure Industries, Inc. ("Pleasure") manufactured the pipes and published a construction manual consulted during construction; Polynesian, Inc. ("Polynesian") made the wall panels and coping tile. The complaint alleged that defendants were liable, under various state law theories, for failing to warn of the danger of diving into shallow water, for failing to ensure that a safe way of entering the water would be available and for providing misleading assurances, express and implied, that diving into shallow water was safe. Count VII of the complaint, the basis for subject matter jurisdiction in the district court, invoked section 23(a) of the CPSA, 15 U.S.C. § 2072(a) (1982), which provides a private right of action for "any person" injured "by reason of any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by the Commission."[1] Zepik claimed that the defendants had knowingly violated rules that require manufacturers, distributors and retailers to report product defects capable of creating "substantial product hazards." *See* 16 C.F.R.Part 1115 (1988).

The district court ruled in favor of the defendant-appellees in two separate decisions. On April 28, 1986, the district court granted summary judgment to Pleasure in *Zepik v. Ceeco Pool & Supply, Inc.,* 637 F.Supp. 444 (N.D.Ind.1986) (*"Zepik I"*). Although the district court rejected Pleas-

ure's contention that the CPSA's private right of action does not extend to reporting violations, it ruled for Pleasure on this count on the ground that the reporting requirements do not require a manufacturer of pipes or a publisher of construction manuals to report defects in completed pools. *Id.* at 451. This disposition of the sole federal claim should have prompted the district court to consider whether dismissal of the state claims was required under the general principle that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. Instead, the district court went on to consider the merits of the state law claims and to grant summary judgment to Pleasure across the board.

On November 12, 1987, the district court issued a memorandum and order disposing of Zepik's claims against the remaining three defendants. *Zepik v. Ceeco Pool & Supply, Inc.,* 118 F.R.D. 455 (N.D.Ind. 1987) (*"Zepik II"*). The court granted a motion by Loren's to dismiss the CPSA count, having been persuaded by *Drake v. Honeywell, Inc.,* 797 F.2d 603 (8th Cir. 1986), a decision handed down after *Zepik I* had been decided, that section 23(a) of the CPSA did not afford a private right of action for reporting violations. 118 F.R.D. at 458–59. The court further found that "no independent basis existed for this court's continued jurisdiction over the remaining pendent state claims" against Loren's and, citing two of this circuit's decisions under *Gibbs,* dismissed those claims as well. *Id.* at 459. This analysis, however, was not applied to Frost and Polynesian. These defendants, whose situations closely resembled Pleasure's, presumably saw a sure bet in moving for summary judgment on the strength of *Zepik I* and declined to raise arguments for dismissal

---

**1.** Count VI of Zepik's complaint alleges that the defendants "committed FRAUD and DECEIT upon the consuming public" by failing to report defects, as required by law, to the Commission in its capacity as the public's agent. Complaint at 16–18. Isolated passages of the appellant's brief seem to imply that Count VI alleges a

federal law theory distinct from those alleged in Count VII, but no further development of the fraud theory appears in the brief (or in the district court's decisions). Any argument that Count VI supplied an alternative theory of liability under federal law has been waived.

based on *Drake* and *Gibbs*. The district court, "reluctant to dispose of the claims against those defendants on the basis of an argument they ha[d] not addressed," granted summary judgment for Frost and Polynesian on the CPSA and state law counts for reasons almost identical to those recited in *Zepik I. See Zepik II*, 118 F.R.D. at 459–65. As in the earlier order, the district court did not consider whether subject matter jurisdiction over the state law counts against Frost and Polynesian should survive the dismissal of the federal claim.

## II.

### A.

Zepik maintains that his private right of action against the defendants for their violations of reporting regulations issued under the CPSA derives from the plain meaning of the statute. Section 23(a) authorizes suits for damages, costs and legal fees in federal court by anyone injured "by reason of any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by the Commission." Section 15(b) of the CPSA, 15 U.S. C. § 2064(b) (1982), requires manufacturers, distributors and retailers of consumer products to inform the Commission immediately when they obtain any information suggesting that a product they make or distribute "contains a defect which could create a substantial product hazard." Part 1115 of the Commission's regulations, 16 C.F.R.Part 1115 (1988), sets forth the Commission's interpretation of the Act's reporting requirements. The complaint alleges that the defendants were aware that severe injuries had resulted from dives into shallow pools but failed to file the required reports, thereby violating the reporting regulations and incurring liability to victims of diving accidents, such as Zepik, injured "by reason of" the reporting violations.

Several district courts and a state Supreme Court have held that section 23(a) authorizes private actions based on violations of reporting requirements. *See Hughes v. Segal Enters., Inc.*, 627 F.Supp. 1231 (W.D.Ark.1986); *Drake v. Lochinvar*

*Water Heater, Inc.*, 618 F.Supp. 549 (D.Minn.1985), *rev'd sub nom. Drake v. Honeywell, Inc.*, 797 F.2d 603 (8th Cir. 1986); *Wilson v. Robertshaw Controls Co.*, 600 F.Supp. 671 (N.D.Ind.1985); *Payne v. A.O. Smith Corp.*, 578 F.Supp. 733 (S.D. Ohio 1983); *Young v. Robertshaw Controls Co.*, 560 F.Supp. 288 (N.D.N.Y.1983); *Butcher v. Robertshaw Controls Co.*, 550 F.Supp. 692 (D.Md.1981); *Swenson v. Emerson Elec. Co.*, 374 N.W.2d 690 (Minn. 1985), *cert. denied*, 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986). *Butcher*, the first case in this line, set forth the basic "plain meaning" analysis on which the others have relied. *Butcher* focused on section 23(a)'s statement that knowing violation of "a consumer product safety rule or any other rule or order" gives rise to a private cause of action. In view of this broad language, *Butcher* rejected an argument that section 23(a) applies only to consumer product safety rules, 560 F.Supp. at 698–99, and subsequent cases rejected arguments that section 23(a) refers to legislative but not interpretive rules. *Wilson*, 600 F.Supp. at 674–75; *Young*, 560 F.Supp. at 292 n. 8. *Butcher* also rejected the defendant's contention that failure to distinguish between legislative and interpretive rules under section 23(a) would produce an outcome that Congress could not possibly have intended—admission to federal court for any product liability plaintiff able to raise a colorable claim that a defendant had knowingly violated interpretive rules implementing the CPSA's broad reporting obligation. *Butcher* did not dispute that this construction of section 23(a) could expand federal jurisdiction over product liability cases, but observed that this expansion might be "precisely the result intended by Congress." 550 F.Supp. at 700.

When the district court decided *Zepik I*, the *Butcher* line of cases was opposed only by *Morris v. Coleco Industries*, 587 F.Supp. 8 (E.D.Va.1984), and *Kahn v. Sears, Roebuck & Co.*, 607 F.Supp. 957 (N.D.Ga.1985). *Morris* did not address whether 23(a)'s reference to "any other rule" included interpretive rules since the

plaintiff in that case apparently alleged a violation of the statutory reporting requirement rather than the Part 1115 regulations interpreting that requirement. *Morris* held that the plaintiff's cause of action under the CPSA failed both because the alleged violation concerned the statute itself rather than a Commission rule or order and because the court found it "illogical ... that Congress would have supposed that a failure to disclose a mishap to the Commission might proximately cause an injury." 587 F.Supp. at 9–10. *Kahn,* in which the plaintiff did allege a violation of the Part 1115 regulations, summarily determined that Part 1115 contained only interpretive rules, indistinguishable from the statute itself. This move placed *Kahn* on all fours with *Morris,* which the district court then adopted as more convincing than the cases in the *Butcher* line. 607 F.Supp. at 958. *Zepik I* followed the *Butcher* line of cases on the existence of a cause of action under section 23(a) without acknowledging this contrary authority. 637 F.Supp. at 451.

After the district court decided *Zepik I,* the Eighth Circuit issued the first circuit court decision addressing whether section 23(a) creates a private cause of action for violations of the Part 1115 reporting rules. *Drake v. Honeywell, Inc.,* 797 F.2d 603 (8th Cir.1986), *rev'g Drake v. Lochinvar Water Heater, Inc.,* 618 F.Supp. 549 (D.Minn.1985); *accord Kukulka v. Holi-*

*day Cycle Sales, Inc.,* 680 F.Supp. 266 (E.D.Mich.1988). Like *Butcher* and its progeny, *Drake* focused on the types of violations covered by section 23(a). The court observed that section 23(a) creates liability to private parties only for violations of Commission rules. Conspicuously omitted is a right to sue for violations of the statute itself. 797 F.2d at 604, 606.[2] The *Drake* court found that this omission, which in its view distinguished section 23(a) from most other statutory provisions conferring private rights of action, demonstrated Congress' intent to prohibit private enforcement of the statute itself. This element of Congress' intent, according to *Drake,* must inform the construction of the phrase "any other rule or order."[3] Since interpretive rules amount to no more than restatements of statutory provisions, failure to distinguish between legislative rules and interpretive rules for purposes of section 23(a) "would seem to frustrate the congressional intent, expressed by the omission of [a right to sue for statutory violations in] section 23(a), to deny a private cause of action to those injured from a violation of the statute itself." *Id.* at 606. *Drake* also noted that the CPSA delegates legislative rulemaking authority to the Commission in small, section-specific parcels and that section 15(b), the principal source of authority for the Part 1115 reporting requirements, does not authorize legislative rulemaking. Furthermore,

**2.** See also Note, *Private Causes of Action Under the Reporting Rules of the Consumer Product Safety Act,* 70 Minn.L.Rev. 955, 959–60 & n. 23 (1986) (arguing that Congress' omission of statutory violations from list of acts giving rise to section 23(a) liability reflected preference for regulatory as opposed to statutory standard setting).

**3.** The genesis of section 23(a)'s broad reference to "any other rule or order" is unclear. The bills enacted by the Senate and House contained identical, arguably narrower language. They stated:

> Any person who shall sustain injury by reason of any knowing (including willful) violation of a *consumer product safety standard, regulation, or order* issued by the Commissioner may sue therefor....

S. 3419, 92d Cong., 2d Sess. § 316(d)(2), 118 Cong.Rec. 21,844 (1972), *reprinted in* Bureau of National Affairs, *The Consumer Product Safety Act: Text, Analysis, Legislative History* App. at 208 (1973) (hereinafter "*Legislative History*"); H.R. 15003, 92d Cong., 2d Sess. § 23(a), 118 Cong.Rec. 31,415 (1972), *reprinted in Legislative History* App. at 305 (emphasis supplied). The Conference Committee apparently viewed the insertion of "any other rule or order" in the final bill as inconsequential, since its report on the reconciliation of the two bills makes no reference to the section 23(a) private cause of action. H.R.Conf.Rep. No. 1593, 92d Cong., 2d Sess. (1972), *reprinted in Legislative History* App. at 311–42. The statement of the Senate Conferees refers to the private remedy provision briefly, referring to a cause of action against "a manufacturer who knows that the product does not meet an applicable product safety standard," but making no mention of remedies for other violations. 118 Cong.Rec. 36,198 (1972) (statement of Senator Moss), *reprinted in Legislative History* App. at 347.

*Drake* observed that the Commission characterized the Part 1115 rules as interpretive when it issued them and that an agency's characterization is ordinarily accorded considerable deference. *Id.* at 607–08. Finding nothing in the legislative history to preclude the limitation of section 23(a) to legislative rules and persuasive practical reasons for federal courts to avoid the difficult issues of causation raised by plaintiffs' claims to have been injured "by reason of" reporting violations, the *Drake* court concluded that section 23(a) does not authorize private actions for reporting violations.

By the time the district court took up the motions for dismissal and summary judgment filed by Frost, Loren's and Polynesian in *Zepik II, Drake*'s analysis was available for consideration. Abandoning its position in *Zepik I,* the district court agreed with Loren's that Zepik's CPSA claim should be dismissed under *Drake. See Zepik II,* 118 F.R.D. at 458–59. However, in responding to the motions filed by Frost and Polynesian, the court assumed the existence of a private cause of action and granted summary judgment to Frost and Polynesian for the reasons given in *Zepik I,* that defendants had no duty to report possible defects in pools for which they provided only isolated components. *Id.* at 465. On appeal Zepik contends that *Zepik II*'s dismissal of the CPSA claim against Loren's incorrectly denied the existence of a private right of action for reporting violations and that both *Zepik I* and *Zepik II* erred in granting summary judgment on the CPSA claims that the district court treated as viable.

### B.

■ We agree with the result in *Drake* and with much of its reasoning. We hesitate, however, to rely exclusively on the distinction between interpretive and legislative rules as grounds for denying the existence of a private cause of action for viola-

tions of reporting requirements. *Drake* properly points out that private actions brought under the Commission's interpretive rules implicate a conflict between the omission of statutory violations and the broad reference to "any other rule" in section 23(a). This conflict may be resolved in one of two ways: the omission of authorization to bring an action directly under the statute may be given broad effect to limit the scope of the phrase "any other rule or order," or the phrase "any other rule or order" may be read expansively to limit the effect of the omission.

Placing greater weight on the omission, as *Drake* argues we should, has the possibly counterintuitive result of deputizing private Attorneys General to enforce rules formulated by the Commission while leaving the Commission alone to enforce congressional strictures restated in interpretive rules. The affront to intuition might be explained away easily if Congress could be seen to have forbidden legislative rulemaking in discrete areas, such as the reporting under section 15(b), where private actions were deemed inappropriate. But the possibility exists, as *Drake* concedes, that the Commission could have issued the Part 1115 regulations as legislative rules under authority of section 16(b), 15 U.S.C. § 2065(b) (1982) (recordkeeping), or section 27(e), 15 U.S.C. § 2076(e) (1982) (performance and technical data).[4] *See Drake,* 797 F.2d at 608 n. 8. If the Commission could, in fact, have issued the reporting requirements as legislative rules, a broad reading of the omission from section 23(a) must rely on a claim that Congress intended to allow the Commission to choose between issuing interpretive reporting rules, which would not give rise to a private cause of action, and issuing legislative reporting rules, which would. But if Congress had intended the omission from section 23(a) to be pregnant with such complex implications, one might expect some reference to

4. Indeed, while the Federal Register notice that accompanied the issuance of Part 1115 described the regulations as interpretive, *see* Substantial Product Hazards: Interpretation, Policy and Procedure, 43 Fed.Reg. 34,987, 34,990

(1978), the list of authorities that precedes Part 1115 in the Code of Federal Regulations cites sections 16 and 27, which authorize legislative rulemaking. 16 C.F.R. Part 1115 note (1988).

these implications in the legislative history. If the drafters had no such purpose in mind, *Drake*'s argument for restricting the scope of the phrase "any other rule" in deference to the omission of a right to sue for statutory violations seems to lose much of its force.

■ We do not need to decide whether, despite these complications, *Drake*'s rationale would be sufficient in itself to defeat a private cause of action for reporting violations. We find additional reasons for barring this cause of action in the requirement that plaintiffs bringing suit under section 23(a) show that they incurred injury "by reason of" a violation of a Commission rule or order. The CPSA does not elaborate on the meaning of "by reason of," but in the absence of any indication that Congress intended to depart from conventional notions of causation we think the causal connection required here should be roughly equivalent to the causal connection required to establish common law tort liability. In *Kelsey v. Muskin, Inc.*, 848 F.2d 39, 42–43 (2d Cir.1988), the Second Circuit held that the doctrine of unforeseeable superseding cause defeated a diver's claim that he had been injured "by reason of" defendants' failures to report swimming pool hazards. *See also Caraballo v. United States*, 830 F.2d 19, 22–23 (2d Cir.1987) (same doctrine defeats claim for diving injury under Federal Tort Claims Act). *Kelsey* appears to rely on New York tort law in affirming the district court's finding that the plaintiff failed to show that his injury occurred "by reason of" the alleged reporting violations. *Kelsey* suggests that causation under section 23(a) is defined by the

tort law of the state where the injury occurred rather than by a uniform federal standard. The choice between these two sources of legal standards to fill gaps in the statute raises complexities that we need not address here. *See Wahba v. H & N Prescription Center, Inc.*, 539 F.Supp. 352, 356–58 (E.D.N.Y.1982) (while section 23 mandates a uniform federal standard of care, damage issues are to be resolved under state law standards). For our purposes, it is enough to observe that given the CPSA's structure and legislative history no plausible federal standard could deviate so radically from established concepts of causation in tort—including those prevailing under Indiana law—as to authorize suits under section 23 for reporting violations.

■ The causal connection between a defendant's reporting violation and a plaintiff's injury is too attenuated and speculative to satisfy generally applicable standards of causation in fact or proximate causation. To establish that an injury occurred "by reason of" a defendant's reporting violations, a plaintiff must show that: (1) by failing to report information that "reasonably support[ed] the conclusion that" a product was defective the defendant deprived the Commission of information not already known to it; (2) if the information had been reported, the Commission would have determined that a defect existed and undertaken to counteract the defect;[5] (3) the Commission's response would have been implemented in time to avert the injury to the plaintiff (and would have survived judicial and congressional scrutiny during the period between the

5. The Commission's principal tools for responding to a dangerous product defect are "consumer product safety standards" specifying performance requirements or requiring warnings or instructions, 15 U.S.C. §§ 2056, 2058 (1982); bans on hazardous products, 15 U.S.C. §§ 2057–2058 (1982); recalls and injunctions against further distribution of products posing substantial hazards, 15 U.S.C. § 2064(c), (d), (g) (1982); and cajolery utilizing the threat of one of these formal actions to encourage private standard setting. For an overview, see Schwartz, *The Consumer Product Safety Commission: A Flawed Product of The Consumer Decade*, 51 Geo.Wash. L.Rev. 32 (1982).

The sellers' obligation to report extends to all information that "reasonably supports" the existence of a substantial hazard, but the Commission may issue an order only after formally determining that a substantial hazard exists. *Compare* 15 U.S.C. § 2064(b) (1982) (reporting standard) *with id.* §§ 2058, 2064(c), (d) (1982) (prerequisites to Commission action). To determine which reporting violations represent "but for" causes of subsequent accidents, a judge or jury would have to consider both these standards. *See Drake*, 797 F.2d at 610 n. 12 (quoting Note, *supra* note 2 at 977 n. 144).

Commission's response and the injury);[6] and (4) the Commission's response would have been effective in preventing the accident in question.

It is significant that not one of these propositions would require a plaintiff to distinguish between the seller of an article that was physically involved in an accident and sellers of similar articles that were not. Any competitor of Frost, Loren's, Pleasure or Polynesian who knowingly failed to inform the Commission of diving accidents in pools built with ladders, pipe or coping tile that lacked warnings against diving into shallow water could also have been named as defendants under Zepik's reading of the "by reason of" requirement of section 23(a). The theory under which the plaintiff's injury would be attributed to these defendants would be identical in all essential features to the theory asserted against the companies that manufactured or distributed the components that were actually incorporated in the pool in which Zepik was injured. Once liability to accident victims for reporting violations is established, nothing in section 23(a) suggests any basis for limiting liability to manufacturers, distributors or retailers of the articles actually involved in accidents.

Concededly, this relaxation of traditional notions of causation would not be entirely without precedent. A number of mostly recent products liability decisions have relaxed the traditional requirement that the plaintiff show by a preponderance of the evidence that the defendant manufactured the actual instrumentality of the plaintiff's injury. In some jurisdictions, plaintiffs who cannot tie their injuries to particular manufacturers have been permitted to sue a number of manufacturers of the same type of product under various formulations of the doctrine of enterprise liability. *See, e.g., Hall v. E.I. Du Pont de Nemours & Co.*, 345 F.Supp. 353 (E.D.N.Y.1972) (blasting cap manufacturers may be jointly liable to plaintiffs who cannot prove which manufacturer produced particular devices that caused their injuries where industry-wide safety standards indicate joint control over risk); *Sindell v. Abbott Laboratories*, 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924 (DES manufacturers subject to liability based on market share despite finding that they did not act in concert to impose risk), *cert. denied*, 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140 (1980). *But see, e.g., Thompson v. Johns–Manville Sales Corp.*, 714 F.2d 581, 583 (5th Cir.1983) (declining to effect "radical ... expansion" of Louisiana tort liability by applying enterprise or market share theories), *cert. denied*, 465 U.S. 1102 (1984); *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241 (Mo.1984) (DES plaintiff cannot, absent state legislation codifying relaxation of traditional causation requirement, recover on market share or enterprise liability theories). However, all of the cases that have dispensed with the requirement that a defendant manufacturer be shown to have made the instrument of the plaintiff's injury were brought by plaintiffs unable to identify the manufacturer of the particular article or articles involved. *See, e.g., Hall*, 345 F.Supp. at 379–80; *Sindell*, 26 Cal.3d at 610–11, 163 Cal.Rptr. at

---

6. In investigating Commission delays in setting consumer product safety standards, one commentator found that under the pre–1981 procedures an average of 1042 days elapsed between the publication of a Notice of Proceeding and the issuance of a final rule. Schwartz, *supra* note 5 at 62–63. The 1981 amendments, Pub.L. No. 97–35, Title XII, § 1202(b), 95 Stat. 703, 703–04 (1981) (codified at 15 U.S.C. § 2056(b) (1982)), made it more difficult to issue a formal standard, adding steps that "seem well designed to discourage the Commission from developing mandatory standards." Schwartz, *supra* note 5 at 72. Banning a product involves the same procedures as issuing a standard, 15 U.S.C. § 2057 (1982), although the recall procedure is

somewhat more streamlined, 15 U.S.C. § 2064 (1982). *See generally* Schwartz, *supra* note 5 at 68–71. To determine whether an injury occurred "by reason of" a reporting violation, it would be necessary to divine which of these options the Commission might have chosen and how long the option might have taken to implement in the particular case.

Speculation about the effects of a report would not end with predictions concerning the Commission's reaction. Further guesswork would be required as to the timing and result of judicial review. *See, e.g., Aqua Slide 'N' Dive Corp. v. CPSC*, 569 F.2d 831 (5th Cir.1978) (setting aside Commission's safety standard for pool slides).

144, 607 P.2d at 936.[7] Interpreting section 23(a) to encompass reporting violations would create CPSA liability for manufacturers, distributors and retailers that could not be sued under the most expansive of state enterprise liability doctrines. If Congress had intended to bring about such a radical expansion of products liability—and of the federal courts' subject matter jurisdiction over these claims—it certainly could have done so. However, we see no indication in the legislative history or the structure of the CPSA that section 23(a)'s "by reason of" language was intended to be construed so broadly as to accomplish this result.[8]

It might be argued that Congress intended for the courts to construe "by reason of" broadly in order to ensure that reporting requirements were taken seriously. The Commission has come to rely heavily on reports from manufacturers and sellers and views underreporting as a serious problem. See Drake, 797 F.2d at 611. However, the Act authorizes civil fines of up to $2,000 for each reporting violation and criminal penalties of up to $50,000 and one year in prison if knowing violations continue once a notice of noncompliance has been issued. 15 U.S.C. §§ 2068–2070 (1982). Whatever added incentive to report might be gained by interpreting the phrase "by reason of" to permit private suits

against violators of reporting requirements must be set against the consequences of this construction: a sharp departure from traditional standards of causation in tort and the expansion of federal subject matter jurisdiction to encompass a broad class of cases heretofore confined to state court except where the requirements of diversity jurisdiction are met.[9] We are unwilling to adopt a reading of the phrase "by reason of" that would entail these consequences without solid support for this outcome in the legislative history or structure of the CPSA.

We therefore affirm the district court's orders dismissing the CPSA count against Loren's and granting summary judgment on this count to Frost, Pleasure and Polynesian. See Pfeil v. Rogers, 757 F.2d 850, 866 (7th Cir.1985) (summary judgment may be affirmed on grounds not relied upon by the district court), cert. denied, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986).

### III.

Zepik's complaint relies solely on the doctrine of pendent jurisdiction as the source for the district court's authority to resolve his state law claims. The doctrine of pendent jurisdiction has both mandatory and discretionary aspects. The state claim

---

7. *See generally* Annotation, *"Concert of Activity," "Alternative Liability," "Enterprise Liability," or Similar Theory as Basis for Imposing Liability Upon One or More Manufacturers of Defective Uniform Product, in Absence of Identification of Manufacturer of Precise Unit or Batch Causing Injury,* 22 A.L.R. 4th 183 (1983 & Supp.1987).

8. To the extent that Congress considered the effect of section 23(a) on the caseload of the federal courts, the prevailing concern appears to have been to restrain the increase. The bill reported by the House Commerce Committee, unlike the Senate bill, did not impose a threshold requirement on the amount in controversy in section 23(a) suits. An amendment to insert the Senate bill's $10,000 minimum into the House bill was enacted during the House debate. 118 Cong.Rec. 31,402–03 (1972), *reprinted in Legislative History* App. at 281–83. The amendment carried despite the argument of Representative Eckhardt that the increase in the federal courts' caseload was justified by the deterrent effect of a federal cause of action without a jurisdictional minimum. Even Representative Eckhardt, the House's strongest defender of an expansive private cause of action, does not appear to have contemplated that reporting violations would give rise to a private cause of action. *See id.* at 31,304, *reprinted in Legislative History* App. at 264 (arguing that section 23(a) would not cause hardship to retailers because injury must occur "by reason of a failure of a consumer product to comply with an applicable standard.")

9. It is true, as the *Butcher* court noted, that claims founded on "empty allegations of noncompliance with CPSA rules" would be subject to summary dismissal followed by the "dismissal of pendent state claims." 550 F.Supp. at 700. Nevertheless, claims of reporting violations lodged under an expansive construction of section 23(a) would sometimes raise determinative issues of fact. Moreover, dismissal at the summary judgment stage would not negate the strategic advantage to some plaintiffs of conducting discovery under the federal rules.

must share "a common nucleus of operative fact" with a federal claim plausible enough to confer subject matter jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed. 2d 218 (1966); *see Buethe v. Britt Airlines, Inc.*, 749 F.2d 1235, 1240 (7th Cir.1984). Where this condition is met, district courts are called upon to make a discretionary determination as to whether deciding the pendent state claims on the merits will serve the interests of "judicial economy, convenience and fairness to litigants." *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.

*Gibbs* indicated in dictum that district judges' discretion was constrained by a general rule that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* This rule, however, has given way to an extension of the *Gibbs'* discretionary standard for determining whether pendent jurisdiction should be exercised when the federal claim survives pretrial motions. *See Rosado v. Wyman*, 397 U.S. 397, 404–05, 90 S.Ct. 1207, 1213–14, 25 L.Ed.2d 442 (1970); *United States v. Zima*, 766 F.2d 1153, 1158 (7th Cir.1985). Although rejection or dismissal of the federal claim before trial, whether by 12(b)(6) motion, summary judgment or any other means, creates a strong presumption that the state claims should be dismissed, *see, e.g., Baltimore Orioles, Inc. v. Major League Baseball Players' Ass'n*, 805 F.2d 663, 682 (7th Cir. 1986), *cert. denied*, 480 U.S. 941, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987), a district court can abuse its discretion by dismissing a state claim due to the termination of the federal claim if judicial economy, convenience and fairness to the litigants strongly favor retaining jurisdiction. *See O'Brien v. Continental Nat'l Bank & Trust*, 593 F.2d 54, 64–65 (7th Cir.1979) (statute of limitations bar on refiling in state court militates against dismissal); *see also Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1178 (7th Cir.1987) (district court entitled to reach merits of state law claims

after granting summary judgment on federal question that entirely resolved the state law issues).

 In this case the mandatory prerequisites to the exercise of pendent jurisdiction were met. Although we have concluded that section 23(a) of the CPSA does not provide a private cause of action for failure to report knowledge of defects, Zepik's CPSA claim was not so weak as to deprive the district court of subject matter jurisdiction from the outset. *See Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974).[10] We also believe that the state claims shared "a common nucleus of operative fact" with the CPSA count. Although the CPSA count relied upon a far more complicated and speculative description of the causes of Zepik's accident than the state law claims entail, the injury and the alleged immediate cause—the absence of an effective warning—are the same.

After disposing of the federal claim before trial and observing that the threshold requirements for pendent jurisdiction were met, the district court should have considered whether this case provided grounds for the discretionary exercise of pendent jurisdiction. *See Zima*, 766 F.2d at 1158–59. However, *Zepik I* makes no reference to the *Gibbs* problem and *Zepik II* offers no explanation for the curious decision to exercise pendent jurisdiction over Zepik's state law claims against Frost and Polynesian, while declining to exercise pendent jurisdiction over the identical claims against Loren's.

 Generally, when a district court fails to appreciate the discretionary nature of the exercise of pendent jurisdiction appellate courts remand for explicit consideration of the appropriate factors. *See, e.g., Buethe*, 749 F.2d at 1238–41; *Rheaume v. Texas Dep't of Public Safety*, 666 F.2d 925, 931–32 (5th Cir.1982) (per curiam), *cert. denied*, 458 U.S. 1106, 102 S.Ct. 3484, 73 L.Ed.2d 1367 (1983). This is the appropriate disposition here. Sometimes the

---

10. *But cf. Martin v. International Dryer Corp.,* 637 F.Supp. 101, 104 (E.D.N.C.1986) (claim that injury occurred "by reason of" failure to report

alleged defect in dryer fails to posit the "rational relationship between cause and effect" needed to obtain Article III standing).

factors that would control the district court's discretion on remand compel a single result and we resolve the jurisdictional question directly. *See, e.g., United Beverage Co. v. Indiana Alcoholic Beverage Comm'n,* 760 F.2d 155, 160 (7th Cir.1985). The district court's statement that it found "no independent basis" for exercising pendent jurisdiction over Zepik's state claims against Loren's, though far short of a full analysis of the relevant factors, might be viewed as weak support for outright dismissal in this case. We are constrained from dismissing Zepik's state claims on our own initiative, however, by the possibility that Zepik would be time-barred from refiling this suit in state court. This court has held that fairness to the plaintiff sometimes requires federal courts to retain pendent jurisdiction over state law claims even where the related federal claims are dismissed prior to trial. *See O'Brien,* 593 F.2d at 65; *see also Duckworth v. Franzen,* 780 F.2d 645, 657 (7th Cir.1985) (district judge may not dismiss pendent state claim following defeat of federal claim at trial unless defendant agrees to waive statute of limitations defense in state court), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). Zepik asserts that "because the limitations period has run on potential state court claims, the dismissal imposes a severe hardship on the plaintiff." Brief for Plaintiff-Appellant at 48. None of the defendants disputes this claim.

A savings clause in Indiana's statute of limitations has been interpreted to allow plaintiffs whose state law claims were dismissed from federal court under *Gibbs* to renew their claims in state court at any time within five years of the dismissal. Ind.Code § 34-1-2-8 (1982); *see Buethe,* 749 F.2d at 1241 & n. 8; *Torres v. Parkview Foods,* 468 N.E.2d 580, 582-83 (Ind. App.1984); *see also Huffman v. Anderson,* 118 F.R.D. 97, 100 (N.D.Ind.1987). Although we are unaware of any reason why this provision should not apply to Zepik, we hesitate to dismiss Zepik's state law claims outright on the assumption that plaintiffs have relied on a position flatly inconsistent with Indiana law and that all of defendants' counsel failed to detect the error. We will therefore remand for determination by the district court whether the exercise of pendent jurisdiction over the state claims under *Gibbs* is appropriate. The district court need not confine its deliberations to the statute of limitations question, although we note that none of the other unusual circumstances that have on occasion justified the exercise of pendent jurisdiction where federal claims have been disposed of before trial appears to pertain here. *See, e.g., Mechmet,* 825 F.2d at 1178 (federal claim dismissed on grounds that squarely control state claim); *Graf v. Elgin, Joliet & Eastern Ry. Co.,* 790 F.2d 1341, 1347-48 (7th Cir.1986) (substantial resources expended in federal court proceedings and successful defense to federal claim controls state law outcomes).

### IV.

For the foregoing reasons, we affirm the judgment with respect to Zepik's claims under the CPSA. We vacate the dismissal of Zepik's state law claims against Loren's and the summary judgment against Zepik on his state law claims against Frost, Pleasure and Polynesian. The state law issues are remanded for the district court's determination whether any basis exists for the exercise of pendent jurisdiction and for other proceedings not inconsistent with this opinion.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.