**Ronald ZEPIK, Plaintiff,**

v.

**TIDEWATER MIDWEST, INC., et al., Defendants.**

**No. S85-291.**

United States District Court, N.D. Indiana, South Bend Division.

Jan. 13, 1989.

Ronald R. Gilbert, Detroit, Mich., Gary Becker, Louisville, Ky., Frank J. Petsche, South Bend, Ind., for plaintiff.

Fred M. Stults, Jr., David L. Zoss, Gary, Ind., for Tidewater Midwest, Inc.

Sam Bernardi, Jr., Valparaiso, Ind., for Loren's Pool and Supply, Inc.

James K. Whitaker, Hammond, Ind., for Polynesian Pools.

James H. Pankow, South Bend, Ind., for Frost Co.

Edward N. Kalamaros, South Bend, Ind., for Pleasure Industries.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause is before the court on remand from the United States Court of Appeals for the Seventh Circuit for consideration of the discretionary exercise of pendent jurisdiction over plaintiff Ronald Zepik's state law claims. *Zepik v. Tidewater Midwest, Inc.*, 856 F.2d 936 (7th Cir.1988). For the reasons that follow, the court declines to exercise that jurisdiction, and dismisses the state law claims for lack of subject matter jurisdiction.

## I.

Mr. Zepik originally brought this action against five defendants, alleging a federal claim under the reporting provisions of the Consumer Products Safety Act ("CPSA"), 15 U.S.C. § 2072(a), and various state claims based on strict liability, negligence, willful and wanton misconduct and breach of express and implied warranties. The court's subject matter jurisdiction was invoked under 28 U.S.C. § 1331. One defendant settled with Mr. Zepik; four defendants remain. The facts giving rise to Mr. Zepik's claims are set forth fully in the earlier opinions in this case, *Zepik v. Ceeco Pool & Supply, Inc.*, 637 F.Supp. 444, 447–448 (N.D.Ind.1986) ("*Zepik I*"); *Zepik v. Ceeco Pool & Supply, Inc.*, 118 F.R.D. 455, 457–458 (N.D.Ind.1987) ("*Zepik II*"), and need not be repeated here. It is sufficient to note that Mr. Zepik was badly injured in a swimming pool a friend constructed from parts provided by the various defendants.

### A.

Defendant Pleasure Industries ("Pleasure") was the first party to seek summary judgment in this cause; the court granted its motion. *Zepik I*, 637 F.Supp. 444. The court concluded that Pleasure was entitled to judgment as a matter of law on the state law claims for product liability, willful and wanton misconduct, and express and implied warranty. Based on the case that then seemed the most persuasive on the subject, *Wilson v. Robertshaw Controls Co.*, 600 F.Supp. 671 (N.D.Ind.1985), the court rejected Pleasure's argument that the CPSA creates no private right of action for violation of its disclosure provisions, but found that since the pool in question was not Pleasure Industries' product, Pleasure had no statutory duty to report the pool's defects to the Consumer Products Safety Commission.

Accordingly, the court granted Pleasure's summary judgment motion.

### B.

Several months later, the court addressed the dispositive motions of Loren's Pool & Supply, Inc. ("Loren's"), Frost Company ("Frost"), and Polynesian, Inc. ("Polynesian"). *Zepik II*, 118 F.R.D. 455. Loren's alone proceeded on the issue of jurisdiction. Relying on the Eight Circuit's intervening decision in *Drake v. Honeywell, Inc.*, 797 F.2d 603 (1986), Loren's argued that failure to comply with the Consumer Product Safety Commission's reporting rules does not give rise to a private cause of action under the CPSA, requiring dismissal of the federal claim, and that no basis existed for the exercise of jurisdiction over the remaining counts. The court agreed and dismissed the claims against Loren's. 118 F.R.D. at 458–459.

The remaining defendants did not argue for dismissal on jurisdictional grounds as Loren's had; they instead sought summary judgment on the grounds that won judgment for Pleasure. Although it seemed logical to dispose of the claims against the remaining defendants on jurisdictional grounds, the court, recognizing that the Seventh Circuit had yet to rule on the permissibility of private actions for violation of the CPSA's reporting provisions, was reluctant to force the remaining defendants to defend on appeal a ruling they had not sought. 118 F.R.D. at 459. Accordingly, the court proceeded to address the merits of Mr. Zepik's state law claims against Frost and Polynesian. The court granted their summary judgment motions and certified those judgments, as well as the judgment for Pleasure, as final pursuant to Fed.R.Civ.P. 54(b).

### C.

Mr. Zepik appealed the dismissal and summary judgments. The Seventh Circuit affirmed the court's holding with respect to the CPSA claim against Loren's and affirmed the judgments of Frost, Pleasure and Polynesian on that basis. *Zepik v. Tidewater Midwest, Inc.*, 856 F.2d at 944. The court deemed it inappropriate to address the state law claims against Frost, Pleasure and Polynesian until this court had considered the exercise of its discretionary pendent jurisdiction over those claims. Dismissal of the CPSA claims left Mr. Zepik without an independent basis for

federal jurisdiction; no federal question remained, and the parties' citizenship was not diverse.

Accordingly, the circuit court vacated the judgments on the state law claims and remanded the case for this court to determine whether to exercise pendent jurisdiction over the state law claims against Loren's, Frost, Pleasure and Polynesian pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## II.

Following remand, this court conducted a telephonic hearing and allowed the parties to submit post-hearing briefs. Mr. Zepik, having seen unfavorable rulings in this court on each of his claims, now argues against the exercise of pendent jurisdiction; that ruling would allow him to proceed in a state court that has not ruled against him already. Frost, Polynesian and Pleasure, having won favorable rulings in this court on Mr. Zepik's state claims, argue for the exercise of pendent jurisdiction; that ruling would allow them to remain in what thus far has been a friendly port. Frost and Pleasure also argue other bases for federal jurisdiction. Loren's, having once convinced the court to dismiss the state claims for want of jurisdiction, continues to argue against the exercise of pendent jurisdiction.

## A.

■ Frost and Pleasure present an argument that must be confronted before examining the matter of pendent jurisdiction. They argue that a basis for jurisdiction exists apart from pendent jurisdiction. They begin with the position that the claims against Loren's have been or should be dismissed. Loren's is the sole non-diverse party; like Mr. Zepik, Loren's is a citizen of Indiana, while the remaining defendants are citizens of Wisconsin and Michigan. Accordingly, Frost and Pleasure argue, with Loren's out of the picture, the court has complete diversity for purposes of jurisdiction under 28 U.S.C. § 1332.

Pleasure argues that the order in which the court ruled on the motions in its second summary judgment opinion is critical because the court ruled first on Loren's dismissal motion. Once that motion was granted, Pleasure suggests, diversity jurisdiction existed, and the court properly addressed the state law claims against the remaining defendants. The court cannot agree. The court entered a single judgment pursuant to a single opinion. When that opinion was filed, judgments were entered simultaneously in favor of Loren's, Frost, Polynesian, and Pleasure (whose earlier victory was made final). The court of appeals then vacated those rulings in a single opinion. In short, there never has been a time in the progress of this suit when Frost, Polynesian and Pleasure were parties and Loren's was not.

The court still might consider separately the matter of pendent jurisdiction over Loren's on the one hand, and Frost and Pleasure on the other, although no party has suggested a basis for disparate treatment. Frost and Pleasure argue that if the court first dismisses the claims against Loren's, diversity jurisdiction would exist with respect to Frost and Pleasure.

### 1.

As a preliminary matter, if federal jurisdiction is retained with respect to Frost, Polynesian and Pleasure, dismissal with respect to Loren's would be inconsistent with the principles of pendent jurisdiction. As is discussed more fully in Part II–C–2 below, judicial economy is a principal consideration in deciding whether to exercise pendent jurisdiction. This consideration looks not only to the duplication of efforts already undertaken, but also to the prospect of dual litigation. The pendent jurisdiction doctrine favors a single trial, rather than a federal trial on federal claims and a state trial on closely-related state claims. *See, e.g., Sparks v. Hershey*, 661 F.2d 30 (3d Cir.1981).

This court's dismissal of Mr. Zepik's state claims would limit the case to no more than one trial, and that in state court. Should the court retain jurisdiction, there would be but one trial against Loren's, in state court—assuming that the summary judgments in favor of the remaining defendants are affirmed. If those judgments

are reversed, there might be more than one trial in more than one court.

### 2.

■ Even assuming Loren's could be removed from the litigation at this stage, the court would not obtain subject matter jurisdiction.

Frost and Pleasure cite several cases for the proposition that a plaintiff may amend through the time of appeal, and those amendments relate back to the commencement of the action for purposes of diversity jurisdiction. *Luehrs v. Utah Home Fire Ins. Co.*, 450 F.2d 452 (9th Cir.1971); *DeVries v. Starr*, 393 F.2d 9 (10th Cir.1968); *Neagle v. Johnson*, 381 F.2d 9 (8th Cir. 1967). Those cases, however, simply allowed amendment for the purpose of assuring "that diversity jurisdiction has existed throughout the progress of this case." *Luehrs v. Utah Home Fire Ins. Co.*, 450 F.2d at 454. Plainly, even if the remaining parties now are of diverse citizenship, diversity jurisdiction has not existed throughout the progress of this case.

■ Citizenship generally is determined for jurisdictional purposes at the time suit is filed. *Smith v. Sperling*, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957). Diversity jurisdiction did not exist when Mr. Zepik filed his complaint; he and Loren's were Indiana citizens. Frost cites *Hixon v. Sherwin–Williams Co.*, 671 F.2d 1005 (7th Cir.1982), in support of its position, but that case did not involve the removal of a party whose presence eliminated federal jurisdiction; it involved the removal of a party whose claim was jurisdictionally defective for want of a sufficient amount in controversy. The presence of a jurisdictionally insufficient claim would not defeat jurisdiction over the remaining claims.

■ Fed.R.Civ.P. 21 affords the court authority to drop a non-diverse party for the purpose of maintaining diversity jurisdiction, but Loren's was not dropped as a party; the claims against Loren's were dismissed for failure to state a claim and want of jurisdiction. Rule 21 is a tool to maintain federal jurisdiction, not to create it. Even if Rule 21 were viewed as analogous

authority for retroactive diversity jurisdiction such as Frost seeks, only a dispensable party may be dropped to preserve diversity jurisdiction under Rule 21. *See Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523–1524 (9th Cir. 1987); *Erie Machine Products, Inc. v. Mazak Yamazuki Mach. Corp.*, 574 F.Supp. 1056, 1058 (E.D.Wis.1983). No one has suggested that Loren's, which assisted and directed the construction of the pool in which Mr. Zepik was injured, *Zepik I*, 637 F.Supp. at 447, is a dispensable party.

### 3.

The court does not have, and cannot now obtain through carefully arranged rulings, diversity jurisdiction over this suit pursuant to 28 U.S.C. § 1332.

### B.

■ Frost also raises an argument based on the analysis of pendent party jurisdiction found in *Zabkowicz v. West Bend Co.*, 789 F.2d 540 (7th Cir.1986), and *Sarnoff v. American Home Products*, 798 F.2d 1075 (7th Cir.1986). Conceding that it did not raise the argument before the circuit court because that court raised the jurisdictional issue on its own, Frost argues that 28 U.S.C. § 1332 provides an independent basis for federal jurisdiction over Mr. Zepik's claims against Frost, Pleasure and Polynesian, and the pendent party analysis of *Zabkowicz* is satisfied with respect to the remaining, non-diverse, party.

The pendent party doctrine applied in *Zabkowicz*, however, requires determination, not only whether the exercise of jurisdiction would offend Article III and whether the claims arise from a common nucleus of operative fact, *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), but also whether Congress has expressed its intent that the claim not be brought in a federal court. Section 1332, which requires complete diversity, *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), demonstrates Congressional intent that claims between citizens of the same state not be brought in federal court, *Owen Equipment & Erection Co. v.*

*Kroger,* 437 U.S. 365, 373–374, 98 S.Ct. 2396, 2402–2403, 57 L.Ed.2d 274 (1978), in the absence of independent grounds for federal jurisdiction. *Baker v. J. C. Penney Co.,* 496 F.Supp. 922 (N.D.Ga.1980). Accordingly, the pendent party doctrine provides no basis for the exercise of jurisdiction over Mr. Zepik's state law claims.

### C.

In remanding this case, the Seventh Circuit provided the following statement of the standard to govern this court's inquiry into the exercise of pendent jurisdiction:

*Gibbs* indicated in dictum that district judges' discretion was constrained by a general rule that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." [383 U.S. at 726, 86 S.Ct. at 1139]. This rule, however, has given way to an extension of the *Gibbs'* discretionary standard for determining whether pendent jurisdiction should be exercised when the federal claim survives pretrial motions. *See Rosado v. Wyman,* 397 U.S. 397, 404–05, 90 S.Ct 1207, 1213–14, 25 L.Ed.2d 442 (1970); *United States v. Zima,* 766 F.2d 1153, 1158 (7th Cir.1985). Although rejection or dismissal of the federal claim before trial, whether by 12(b)(6) motion, summary judgment or any other means, creates a strong presumption that the state claims should be dismissed, *see, e.g., Baltimore Orioles, Inc. v. Major League Baseball Players' Ass'n,* 805 F.2d 663, 682 (7th Cir.1986), *cert. denied,* 480 U.S. 941, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987), a district court can abuse its discretion by dismissing a state claim due to the termination of the federal claim if judicial economy, convenience and fairness to the litigants strongly favor retaining jurisdiction. *See O'Brien v. Continental Nat'l Bank & Trust,* 593 F.2d 54, 64–65 (7th Cir. 1979) (statute of limitations bar on refiling in state court militates against dismissal); *see also Mechmet v. Four Seasons Hotels, Ltd.,* 825 F.2d 1173, 1178 (7th Cir.1987) (district court entitled to reach merits of state law claims after

granting summary judgment on federal question that entirely resolved state law issues).

856 F.2d at 945. With these standards in mind, the court turns to the parties' arguments in support of continued federal jurisdiction.

### 1.

■ As the appellate decision noted, a federal court may abuse its discretion by refusing to exercise pendent jurisdiction if the plaintiff would be barred from bringing the claim in state court, *O'Brien v. Continental Nat'l Bank & Trust,* 593 F.2d 54, 64–65 (7th Cir.1979), although this factor is not always dispositive. *Quality Foods de Centro America, S.A. v. Latin–American Agribusiness Development Corp., S.A.,* 711 F.2d 989, 999–1000 (11th Cir.1983); *Pharo v. Smith,* 625 F.2d 1226, 1227 (5th Cir.1980). This presents no obstacle to dismissal of Mr. Zepik's claims; during the post-remand hearing, no ground was suggested for opposing application of Indiana's Journeyman's Act, IND. CODE 34–1–2–8, to Mr. Zepik's claims if they are refiled in the courts of Indiana, as Mr. Zepik intends to do. That statute affords Mr. Zepik five years from dismissal within which to file a state suit.

### 2.

The *Gibbs* Court instructed trial courts to consider judicial economy, convenience and fairness to the parties, and the avoidance of needless decisions of state law in deciding whether to exercise pendent jurisdiction. 383 U.S. at 726, 86 S.Ct. at 1139. Frost, Polynesian and Pleasure each stress the factor of judicial economy. They note that considerable discovery has occurred in this action, that the suit now pends before a judge quite familiar with the issues and governing law, that all of the parties have devoted considerable time to briefing dispositive motions, and that the case is now poised to move on to the appellate phase.

Those defendants draw strength from language found in *Graf v. Elgin, Joliet & Eastern Ry. Co.,* 790 F.2d 1341, 1347–1348 (7th Cir.1986):

Judicial economy, the essential policy behind the modern doctrine of pendent jurisdiction which *Gibbs* created, supports the retention of pendent jurisdiction in any case where substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort.

The holding of *Graf* is less supportive of the defendants' position than is the quoted language, however. In *Graf,* the state claims were subject to a defense based on federal law, adding support for the exercise of federal jurisdiction. The *Graf* court noted the impact of the federal defense upon its analysis:

> This case has been in federal court since 1979. The district judge knows the facts and the issues. He should be allowed to resolve the case without making the parties start over in another court system, at least if the case can be resolved now by a ruling on an issue of federal law.

790 F.2d at 1348. *Cf. LaBuhn v. Bulkmatic Transport Co.,* 865 F.2d 119, 122–23 (7th Cir., 1988) (no abuse of discretion in declining to exercise pendent jurisdiction on face of possible federal defense). Further, the opinion remanding this case demonstrated the circuit court's awareness of the principles of *Graf:*

> ... we note that none of the other unusual circumstances that have on occasion justified the exercise of pendent jurisdiction where federal claims have been disposed of before trial appears to pertain here. *See, e.g., Mechmet [v. Four Seasons Hotels, Ltd.,]* 825 F.2d [1173,] at 1178 [ [ (7th Cir.1987) ] (federal claim dismissed on grounds that squarely control state claim); *Graf v. Elgin, Joliet & Eastern Ry. Co.,* 790 F.2d 1341, 1347–1348 (7th Cir.1986) (substantial resources expended in federal court proceedings and successful defense to federal claim controls state law outcomes).

Frost also cites *Parrent v. Midwest Rug Mills, Inc.,* 455 F.2d 123 (7th Cir.1972), in which the court declined to remand for consideration of *Gibbs'* applicability to the plaintiff's state law claims after determin-

ing, in a question of first impression for the Seventh Circuit, that the statute of limitations barred the federal claim. Instead, the *Parrent* court addressed the merits of the state law claims in light of the prior commitment of the resources of the court and counsel to those claims. *Parrent,* like this case, involved the district court's resolution of state law claims after rejecting the federal claims on grounds not theretofore considered by the Seventh Circuit. *Parrent,* however, involved rejection of the federal claim following trial and hence falls outside the *Gibbs* Court's admonition that state claims should be dismissed "if the federal claims are dismissed before trial...." 383 U.S. at 726, 86 S.Ct. at 1139. *See also Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449, 458 (7th Cir.), *cert. denied* 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982) ("The RICO claim, the only federal claim to which Seidman's common law counts could be pendent, was not dismissed before trial, so the rule just stated is not strictly applicable.").

### 3.

Considerations of fairness and convenience to the litigants favor neither dismissal nor retention of jurisdiction in this case. An Indiana state court would seem no less convenient to the litigants than a district court located in Indiana; no defendant has suggested that a state court would accord it less fairness than a federal court. Although dismissal and refiling would require a state court to retrace many of this court's steps (albeit perhaps to a different conclusion), it is not clear that counsel will need to duplicate the efforts already made. Apart from further discovery to determine Mr. Zepik's present physical condition, it does not appear that additional discovery would be necessary.

### 4.

Mr. Zepik's remaining claims are based exclusively on state law. He seeks recovery on theories of product liability, express and implied warranty, negligence and willful and wanton misconduct. No federal defenses have been raised or suggested. The *Gibbs* Court suggested that federal courts should avoid needless determination

of state law issues "both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." 383 U.S. at 726, 86 S.Ct. at 1139.

During the post-remand hearing, the court expressed concern that Indiana law concerning the liability of manufacturers of component parts is still emerging. Frost and Polynesian disagree and point to the Indiana Supreme Court's decision in *Shanks v. A.F.E. Industries, Inc.*, 275 Ind. 241, 416 N.E.2d 833 (1981). Perhaps that single case will prove to be the final word as to Indiana law, but interests of comity suggest that is a matter better resolved by the Indiana courts than by the federal courts. Further, change in the rule enunciated in *Shanks* could come only from the Indiana courts. *Gust K. Newberg Constr. Co. v. E. H. Crump & Co.*, 818 F.2d 1363, 1368 (7th Cir.1987); *see also Grubb v. W. A. Foote Memorial Hospital, Inc.*, 741 F.2d 1486, 1500 (6th Cir.1984) ("respect for the role of the state courts as the principal expositors of state law counsels restraint by the federal court in announcing new state-law principles", supporting decision to decline to exercise pendent jurisdiction), *vacated on other grounds* 759 F.2d 546 (6th Cir.), *cert. denied* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 289 (1985).

The Supreme Court has said that the "rationale of *Gibbs* centers upon considerations of comity and the desirability of having a reliable and final determination of the state claim by state courts having more familiarity with the controlling principles and the authority to render a final judgment." *Hagans v. Lavine*, 415 U.S. 528, 548, 94 S.Ct. 1372, 1385, 39 L.Ed.2d 577 (1974). Courts of appeal have emphasized the propriety of allowing state courts to resolve state law issues following disposition of the federal claim. *Financial General Bankshares, Inc. v. Metzger*, 680 F.2d 768 (D.C.Cir.1982); *Rice v. President & Fellows of Harvard College*, 663 F.2d 336 (1st Cir.1981), *cert. denied* 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982); *REA Express, Inc. v. Travelers Ins. Co.*, 554 F.2d 1200 (D.C.Cir.), *cert. denied* 434 U.S. 858, 98 S.Ct. 182, 54 L.Ed.2d 131 (1977).

One commentator has written, "A federal court's holding on a novel issue of state law may unduly limit later state consideration of the problem; a state court will be hesitant to create a conflict with the federal determination because of possible reliance upon that earlier exposition." Note, *UMW v. Gibbs and Pendent Jurisdiction*, 81 Harv.L.Rev. 657, 666 (1968). Whether a federal ruling would render Indiana's courts hesitant is a debatable matter; they certainly are free to reject a federal district court's view of Indiana law. *Compare Ash v. Chandler*, 530 N.E.2d 303, 305–306 (Ind. Ct.App.1988) (following view of Indiana law set forth in district court opinion), *with State Farm Fire & Cas. Co. v. Structo*, 530 N.E.2d 116, 118 (Ind.Ct.App.1988) (declining to follow district court opinion). The very uncertainty of the matter favors resolution by the state courts at the outset.

### 5.

Polynesian cites numerous cases in which the exercise of pendent jurisdiction was upheld; the court finds none of those cases persuasive under the circumstances of this case.

One of those cases seems most pertinent at first blush. *Gregory v. Honeywell, Inc.*, 835 F.2d 181 (8th Cir.1987), presents facts remarkably similar to those of this case: the plaintiff had filed a state suit based on the CPSA and state law claims; the defendant removed the case to federal court based on federal question jurisdiction. The district court dismissed the suit on state statute of limitations grounds; on appeal, the plaintiff argued that after *Drake v. Honeywell*, 797 F.2d 603, invalidated his federal claim, the district court should have remanded the state law claims to state court.

The Eighth Circuit disagreed, but offered little explanation beyond a citation to *Graf*, discussed in Part II–C–2 above: "After examining this issue, we conclude that Judge Alsop retained subject matter jurisdiction and was well within his discretion in deciding the case rather than remanding it to state court. *See Graf v. Elgin, Joliet and Eastern Railway Co.*, 790 F.2d 1341, 1347–

48 ..." 835 F.2d at 183. The Seventh Circuit instructed this court to conduct a full analysis of the factors relevant to the exercise of pendent jurisdiction; it is difficult to ground such an analysis in the language of *Gregory.*

Similarly, the jurisdictional discussions in *Ryan v. J. Walter Thompson Co.,* 453 F.2d 444 (2nd Cir.1971), *cert. denied* 406 U.S. 907, 92 S.Ct. 1611, 31 L.Ed.2d 817 (1972), and *Gem Corrugated Box Corp. v. National Kraft Container Corp.,* 427 F.2d 499 (2nd Cir.1970), are too brief to provide guidance for this court's decision.

Some of the cited cases provide greater authority for Polynesian's position. In *Gray v. International Ass'n of Heat & Frost Insulators,* 447 F.2d 1118 (6th Cir. 1971), the district court's exercise of jurisdiction, after dismissal of the federal claim, over a union member's suit against her local union for breach of the union's constitution was found not to have been an abuse of discretion in "view of the substantial time and energy that had already been expended at the time these claims were dismissed." In *Meyer v. California and Hawaiian Sugar Co.,* 662 F.2d 637 (9th Cir.1981), the court, using a similar rationale, upheld the resolution of state and federal claims by summary judgment. The *Gray* court had to resolve a statute of limitations issue on which the Kentucky courts had not spoken. 447 F.2d at 1121.

*Gray* and *Meyer* stand as authority for the proposition that this court might not abuse its discretion by exercising jurisdiction, but their analyses of the *Gibbs* factors are too brief to be persuasive authority for the proposition that this court must do so. *See LaBuhn v. Bulkmatic Transport Co.,* 865 F.2d 119 (7th Cir., 1988) (district court could have exercised pendent jurisdiction, but did not abuse discretion in declining to do so).

Polynesian's remaining cases differ too greatly, legally or factually, to be persuasive. Several of the cases involved invocation of pendent party jurisdiction. *State of North Dakota v. Merchants Nat'l Bank & Trust Co.,* 634 F.2d 368 (8th Cir. 1980) (exercise of jurisdiction also justified in light of possible federal preemption of state claims); *Lentino v. Fringe Employee Plans, Inc.,* 611 F.2d 474 (3rd Cir.1979) (exercise of jurisdiction also justified because federal claim was not dismissed until trial); *Transok Pipeline Co. v. Darks,* 565 F.2d 1150 (10th Cir.1977), *cert. denied* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978) (exercise of jurisdiction also justified because federal claims were not settled until eve of trial). For the reasons discussed in Part II–A of this memorandum, the court finds those cases inapplicable.

*State of Arizona v. Cook Paint & Varnish Co.,* 541 F.2d 226 (9th Cir.1976), *cert. denied* 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977), is procedurally dissimilar from the case at bar. When the district court dismissed the state claims with prejudice, the federal claim was viable. The Ninth Circuit simply held that it was no abuse of discretion to decline to vacate the dismissals with prejudice when the federal claim later was dismissed. This court resolved Mr. Zepik's state and federal claims simultaneously.

Finally, in *Stamford Board of Education v. Stamford Education Ass'n,* 697 F.2d 70 (2nd Cir.1982), the court upheld the exercise of pendent jurisdiction of state contract claims that ultimately were held to be void as against federal public policy, a holding that seems consistent with *Graf v. Elgin, Joliet & Eastern Ry. Co.,* 790 F.2d 1341, in which a federal defense applied to the state law claim. Mr. Zepik's remaining state law claims present no federal concerns.

### 6.

Based on the foregoing, the court concludes that the interests of judicial economy favor, but do not demand, continued exercise of federal jurisdiction; considerations of fairness and convenience to the litigants are wholly neutral factors; and Indiana's statute of limitations would permit Mr. Zepik to bring his claims in state court. Most importantly, no federal issues mingle with the state law claims; the courts of Indiana should be afforded the opportunity to shape the state's law con-

760

cerning liability for the manufacture of component parts.

### III.

The Seventh Circuit affirmed the dismissal of Mr. Zepik's federal claims. This court declines to exercise discretionary pendent jurisdiction over Mr. Zepik's pendent state claims against Loren's, Frost, Polynesian and Pleasure. Accordingly, the court now DISMISSES those state law claims for want of subject matter jurisdiction.

SO ORDERED.