**Malcolm McCONAHY, Plaintiff,**

v.

**CITY OF LONDON CORPORATION, Defendant.**

United States District Court,
D. New Jersey.

Aug. 30, 1974.

Malcolm McConahy, pro se.

## SUMMARY

BIUNNO, District Judge.

McConahy has submitted to the court a pro se complaint, a sworn application for leave to proceed without prepayment of costs (in forma pauperis), and instructions to the U.S. Marshal for the service of process.

The application asserts that McConahy has just been released from 4 years' imprisonment with a discharge grant of $70., and that he has since been unemployed. No details are given to indicate whether McConahy has any other assets or income, including the possible receipt of welfare payments or the like.

The application also asserts that the nature of McConahy's claim, briefly stated, is "recovery of losses caused by seizure of business property." The expansion of the claim in the complaint is that the City of London Corporation, acting through Walter Isaacs and Peter Harwood, said to be agents in some unidentified capacity, unlawfully seized the company charters, share certificates and related memoranda concerning 3 named Panamanian corporations, claimed to be McConahy's sole property. The seizure is said to have occurred in June and July of 1970. The 3 Panamanian companies are alleged to have been formed by McConahy in conjunction with his business as a management consultant for delivery to clients, presumably before the start of his 4 year period of imprisonment. Compensatory damages are claimed in the amount of $355,955.71 (plus interest and costs), as well as punitive damages of $500,000.

The complaint, sworn affidavit and instructions to the U.S. Marshal, while defective in certain respects to be mentioned, carry the marks of skilled preparation and typing. The court notices judicially that the address given by McConhay is at a location on the east bank of the Passaic River where there are no residences, and is the same as the office address of a local attorney who completed the jurat on McConahy's oath.

The complaint does not identify the "City of London Corporation," other than to say that it is "an alien, a corporation formed under the laws of the United Kingdom [sic]." The instructions to the U.S. Marshal call for service by the Clerk, by registered airmail, return receipt requested, in accordance with F.R.Civ.P. 4(i)(1)(D), addressed to "City of London Corporation, Guildhall, London E.C. 4, England."

From all that appears, then, McConahy seeks to bring before this court the ancient City of London, a governmental subdivision of England, a sovereign nation, from which this nation declared its independence after the unpleasantness with George III. The court will take judicial notice of certain basic facts that have been long and well known, and which are recorded in considerable detail in reference sources of substantially undisputed accuracy. These facts are:

. . . the City of London encompasses an area of some 673 acres on the north bank of the river Thames in England;

. . . the City is one of 29 municipal divisions comprising the County of London;

. . . the origins of the City are ancient, and its position as a government is unique among the cities of the Western World;

. . . the ancient rights of the City of London are assured to it by Article 13 of the Magna Charta, done at Runnymede, June 15, 1215 A.D.;

. . . in 1683, Charles II caused a writ of *quo warranto* to issue against the Corporation, and this writ resulted in a declaration by the King's Bench forfeiting the charter, but this was later set aside by the House as illegal and as a grievance;

. . . among the ancient rights and privileges of the City is that which authorizes the lord mayor of London to close the Temple Bar to the sovereign.

See, in this connection, "London," in Encyclopaedia Brittanica, Eleventh Edition (1911), Vol. 16, at pp. 938–968, and Magna Charta, Art. 13, *supra.*

■■ It was long ago held, and more recently confirmed, that a civil action

does not lie in our courts against a foreign sovereign or one of its political subdivisions. This is on the basis of sovereign immunity. It is customary, when that immunity is waived, to limit suits against the sovereign to its own courts. See The Schooner Exchange v. M'Faddon, 7 Cranch 116, 3 L.Ed. 287 (1812). In National City Bank of New York v. Republic of China, 348 U.S. 356, 75 S.Ct. 423, 99 L.Ed. 389 (1955), the court ruled that it could not hold a tong in check. On the domestic scene, *cf.* Chisholm v. Georgia, 2 Dall. 419, 1 L.Ed. 440 (1973), U.S.Const., Amend XI, Hans v. Louisiana, 134 U.S. 1, at 11, 10 S.Ct. 504, 33 L.Ed. 842 (1890); Monaco v. Mississippi, 292 U.S. 313, at 319, 54 S. Ct. 745, 78 L.Ed. 1282 (1934) and Cohens v. Virginia, 6 Wheat. 264, at 406, 5 L.Ed. 257 (1821).

There is no point to the allowance of the filing of a complaint without prepayment of fees under 28 U.S.C. sec. 1915 when the court is wholly unable to bring the defendant within the reach of its process. Such a step would be an exercise in futility, a commodity whose supply has been exhausted.

The situation here is the same, in substance, as that dealt with in United States ex rel. Mayo v. Satan and His Staff, 54 F.R.D. 282 (W.D.Pa.1971).

It is plain to the court that if the lord mayor of London may exclude Elizabeth II, by the Grace of God Queen of England, from crossing the Temple Bar, he may equally exclude the U.S. Marshal, the Clerk and the U.S. Postal Service, whether the entry be actual or constructive.

The court accordingly concludes that McConahy's application must be denied. The denial is without prejudice, of course, to the assertion of the claim before a tribunal having jurisdiction of both the subject matter and the person.

The clerk is directed to assign a miscellaneous docket number to the complaint and other papers, and the application for leave is denied. So ordered.