J. John GORDON, Plaintiff

v.

The SECRETARY OF STATE OF NEW JERSEY, Defendant.

Civ. No. 78–2745.

United States District Court, D. New Jersey.

Nov. 9, 1978.

J. John Gordon, certified candidate for the office of President of the United States, plaintiff pro se.

## OPINION

BIUNNO, District Judge.

Gordon has submitted to the Clerk a pro se "bill of complaint", received November 8, 1978, together with an affidavit dated November 5, 1978 for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a). The affidavit establishes that Gordon is eligible to file without prepayment of fees and costs, and a suitable order to that end will be entered.

As a civil complaint under 28 U.S.C. § 1915, the pleading is subject to preliminary evaluation to determine whether the same be frivolous and thus subject to dismissal under 28 U.S.C. § 1915(d).

The nub of the complaint is that on December 2, 1978 (no doubt intended to read "1975"), Gordon says he was unlawfully arrested while campaigning in the New Hampshire Presidential Primary, and unlawfully jailed without bail until March 15, 1976. As a consequence, it is claimed, the 1976 presidential election was fraudulent and new "legal" elections must be held for the office of President of the United States.

This suit is filed in this district on the theory that the citizens (electorate?) of New Jersey were denied a free Presidential election in 1976. The demand for judgment

includes a request that new Presidential elections be held for the State of New Jersey. The complaint also alleges that: "Had there been a free legal 1976 Presidential election, J. John Gordon would now be the President of the United States."

The complaint must be dismissed as frivolous. Under Article II and Amendment XII of the Constitution of the United States, the President is elected, not by direct popular vote but by the electoral college, composed of those electors (equal in number to the whole number of Senators and Representatives to which each state is entitled in the Congress) elected in each State. The electors vote for a President and a Vice President, from among persons eligible for those offices (at least one not being an inhabitant of the same state as the electors). The lists of votes are sealed and certified, then forwarded to the President of the Senate who, in the presence of the members of both Houses, opens the certificates and the votes are counted. If no person has a majority of the whole number of electors, then the House of Representatives chooses a President from among those persons (not exceeding three) who have the highest numbers of votes; but in such voting, the votes are taken by states (one vote for each state).[1]

Thus, as is well known, presidential primaries in those states whose laws provide for them are not primaries in any real sense at all, but rather are semi-official methods for taking a "poll" of the sense of the electorate. There used to be a saying that, "As Maine goes, so goes the Nation", and in more recent years, the early New Hampshire "primary" has been regarded by some political pundits as a bellwether of popular appeal and of charisma.

■ As a consequence, whether in jail or not, nothing prevented Gordon from seeking to gain the votes of enough electors to have been elected President of the United States. The classic example is that of Mayor Curley of Boston, who was re-elected while in jail. Eugene V. Debs ran for President four times and was a candidate while in jail.[2] Gordon was free to do the same.

■ Beyond that, the complaint challenges the right of Jimmy Carter, who is at least *de facto* President of the United States, to hold that office. The claim that the 1976 election was fraudulent due to Mr. Gordon's allegedly illegal incarceration from December 2, 1975 to March 15, 1976, and the express claim that Mr. Gordon would otherwise be President today, implies that Jimmy Carter is not President *de jure*. To advance such a claim, President Carter would be an indispensable party, yet he is not made a defendant. In this sense, the complaint sounds in the nature of the common law prerogative writ of *quo warranto*, issued out of the King's Bench to try title to public office.

So far as New Jersey elections are concerned, the information in the nature of *quo warranto* has been established from ancient days. See, for example, *Stokes v. Board,* 35 N.J.L. 217 (S.Ct.1871); *Hoey v. Ocean,* 39 N.J.L. 75 (S.Ct.1876); *State v. Passaic County Clerk,* 25 N.J.L. 354 (S.Ct.1856).

Under *N.J.Const.1947,* Art. 6, § 5, par. 4, the prerogative writs were superseded and in lieu thereof (including quo warranto) review, hearing and relief is to be afforded in the Superior Court. Where the action challenged is that of a state officer or agency, the prerogative writ relief is afforded by means of an "appeal" to the Appellate Division of the Superior Court, under N.J.Court Rule R. 2:2–3(a)(2), the time for filing notice of appeal being limited to 45 days under N.J.Court Rule R. 2:4–1(b).

1. Amendment XXV deals with succession to the presidency in the event of removal, death, resignation or disability of the president and does not affect the issues in this case.

   Under Article II, § 1, par. 5, every natural born citizen of the United States, over the age of 35 years and a resident for 14 years, is eligible to be elected President. There is only one individual now alive, otherwise qualified, who is ineligible. That individual is Richard Nixon, who was twice elected, and so is barred by Amendment XXII.

2. Mr. Debs was a candidate in 1900, 1904, 1908 and 1920. See *Lincoln Library of Essential Information,* 34th Ed., 1971 (Frontier Press) at p. 1783.

But the Secretary of State is also the wrong defendant, even if this were not the wrong court and even if the time for review had not expired long ago. The only function of the Secretary of State is to certify the persons chosen by the people as their electors. It is the electors who vote for the President, and it is the President of the Senate who opens the ballots and causes the votes to be tallied.

For these and other obvious reasons, the complaint is of a class with *U. S. ex rel. Mayo v. Satan,* 54 F.R.D. 282 (D–Pa., 1971); *McConahy v. City of London,* 381 F.Supp. 728 (D–N.J., 1974); *Ruth v. First Nat'l Bank,* 410 F.Supp. 1233 (D–N.J., 1976); *Searight v. New Jersey,* 412 F.Supp. 413 (D–N.J., 1976); *Ruth v. Congress, etc.,* 71 F.R.D. 676 (D–N.J., 1976); and *Keno v. Doe,* 74 F.R.D. 587 (D–N.J., 1978). It is frivolous within the meaning of 28 U.S.C. § 1915(d), and an order of dismissal will be entered.

Finally, because Gordon's letter comes here from Worcester County Jail in Massachusetts, where he is evidently confined, and because one of his demands for judgment is that he be freed, the court has examined the complaint as though it were a petition under 28 U.S.C. § 2254. Aside from the fact that the presentation is not on the form required by the Rules enacted by Congress, the fact is that this court has no jurisdiction because the person having custody of him, whether keeper or warden, is not within this District, and neither is Gordon.