Michael **KLINGLER**

v.

**YAMAHA MOTOR CORPORATION, U.S.A.**

**Civ. A. No. 89–6889.**

United States District Court, E.D. Pennsylvania.

April 23, 1990.

---

Glennis L. Clark, Allentown, Pa., for plaintiff.

Jonathan Dryer, Wilson, Elser, Moscowitz, Edelman & Dicker, Philadelphia, Pa., for defendant.

## MEMORANDUM

CAHN, District Judge.

In this products liability action, the defendants have moved to dismiss the entire action because of the absence of diversity, to strike paragraph six of the amended complaint as immaterial matter, and to dismiss Count Three of the amended complaint for failure to state a claim upon which relief may be granted. The motion to dismiss the entire action shall be denied; the other two motions shall be granted.

## I. BACKGROUND

Michael Klingler, a citizen of Pennsylvania, alleges that, on September 26, 1987, he was thrown from an all-terrain vehicle manufactured by Yamaha Motor Corporation, U.S.A. ("Yamaha") and suffered severe injuries. Amended Complaint, ¶¶ 4, 5, 8, 15. As a result, he has brought this action. Yamaha is the only defendant named in the caption of the amended complaint. Paragraph six, however, states that there are Doe defendants in this action; it asks permission to amend the complaint "to show the true names and capacities of these Defendants when they have been ascertained." These Does are alleged to be liable for the injuries in the same manner as Yamaha. Amended Complaint, ¶ 6.

All but one count of the amended complaint set forth state law claims for breach of warranty, negligence, and the like. Count Three alleges that the all-terrain vehicle in question created a substantial product hazard as defined in the Consumer Product Safety Act, 15 U.S.C. § 2064(a), and that Yamaha's failure to comply with that section of the statute and the corresponding regulations (16 C.F.R. §§ 1115–16) caused the damages listed in the complaint. Amended Complaint, ¶¶ 26–28. Jurisdiction rests upon 28 U.S.C. § 1332.[1]

Yamaha has moved to dismiss Count Three because the statute under which Klingler purports to proceed does not create a private cause of action. It also has moved to dismiss the complaint as a whole because the presence of the Doe defendants defeats diversity. Alternatively, it argues that paragraph six of the complaint should be stricken, because Doe defendants are not permitted under the Federal Rules of Civil Procedure.

## II. CONSUMER PRODUCT SAFETY ACT

Section 23(a) of the Consumer Product Safety Act ("CPSA") allows private damages suits by "[a]ny person who shall sustain injury by reason of any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by the [Consumer Product Safety] Commission ..." 15 U.S.C. § 2072(a). No section allows private suits for violations of the statute itself, though the Consumer Product Safety Commission ("Commission") may act against statutory violations. 15 U.S.C. §§ 2069(a)(1), 2070, 2071. Section 15(b) of the CPSA requires that manufacturers, distributors, and retailers of consumer products distributed in commerce inform the Commission when such a product fails to comply with an applicable consumer product safety rule or contains a defect which could create a substantial product hazard. 15 U.S.C. § 2064(b). The Commission has set forth rules guiding the manner in which these reports are to be made. 15 C.F.R. § 1115 (1989).

---

**1.** The plaintiff alleged diversity jurisdiction, despite the presence of a federal claim. Presumably federal question jurisdiction would have been available, with the state law claims pending. However, in light of the disposition of the federal count, the plaintiff in fact chose the only cognizable jurisdictional head.

Klingler alleges that, by failing to report a defect in the all-terrain vehicle to the Commission, Yamaha violated 15 C.F.R. § 1115 and thus may be sued under 15 U.S.C. § 2072(a) of the CPSA. Yamaha responds by arguing that there is no private cause of action for failing to report a possible hazard.

At the outset, it may be noted that the great weight of authority favors Yamaha. Every federal appellate court that has decided this issue has held that there is no private cause of action to enforce the reporting requirements of section 15(b). *Kloepfer v. Honda Motor Co.*, 898 F.2d 1452, 1457–58 (10th Cir.1990); *Benitez–Allende v. Alcan Aluminio do Brasil, S.A.*, 857 F.2d 26, 34–35 (1st Cir.1988) (Breyer, J.); *Zepik v. Tidewater Midwest, Inc.*, 856 F.2d 936, 940–44 (7th Cir.1988); *Kelsey v. Muskin, Inc.*, 848 F.2d 39, 42–43 (2d Cir.1988); *Copley v. Heil–Quaker Corp.*, No. 86–3360, slip op. at 3 (6th Cir. May 20, 1987) (per curiam) [818 F.2d 866 (table)]; *Drake v. Honeywell, Inc.*, 797 F.2d 603, 605–10 (8th Cir.1986). Although some courts have upheld a private cause of action, almost every court since *Drake* has held otherwise. *Compare Ekx v. Diamondlac Corp.*, 722 F.Supp. 625, 627–29 (D.Nev. 1989) (no private cause of action); *Sara Lee Corp. v. Homasote Co.*, 719 F.Supp. 417, 424–25 (D.Md.1989) (same); *Crouse v. Kawasaki Heavy Indus. Ltd.*, 716 F.Supp. 723, 724–26 (N.D.N.Y.1989) (same); *O'Connor v. Kawasaki Motors Corp.*, 699 F.Supp. 1538, 1544–45 (S.D.Fla.1988) (same); *DesLauriers v. Honda Motor Co.*, No. 88–407, 1988 WL 212476 (W.D.Pa. June 27, 1988) (same); *Kukulka v. Holiday Cycle Sales, Inc.*, 680 F.Supp. 266, 268–69 (E.D.Mich.1988) (same); *Martin v. International Dryer Corp.*, 637 F.Supp. 101, 103–04 (E.D.N.C.1986) (same); *Kahn v. Sears, Roebuck and Co.*, 607 F.Supp. 957, 958–59 (N.D.Ga.1985) (same); *Morris v. Coleco Indus.*, 587 F.Supp. 8, 9–10 (E.D.Va. 1984) (same); *and Howard v. Poseidon*

*Pools, Inc.*, 134 A.D.2d 926, 522 N.Y.S.2d 388 (1987) (same) *with Brown v. Daisy Mfg. Co.*, 724 F.Supp. 44, 46–48 (N.D.N.Y. 1989) (private cause of action); *Hughes v. Segal Enters., Inc.*, 627 F.Supp. 1231, 1240 (W.D.Ark.1986) (same); *Wilson v. Robertshaw Controls Co.*, 600 F.Supp. 671, 674–75 (N.D.Ind.1985) (same); *Payne v. A.O. Smith Corp.*, 578 F.Supp. 733, 738 (S.D. Ohio 1983) (same); *Young v. Robertshaw Controls Co.*, 560 F.Supp. 288, 292–93 (N.D.N.Y.1983) (same); *Butcher v. Robertshaw Controls Co.*, 550 F.Supp. 692, 698–700 (D.Md.1981) (same); *and Swenson v. Emerson Elec. Co.*, 374 N.W.2d 690, 698–705 (Minn.1985) (same).[2] *Cf. Mason v. Bernzomatic Corp.*, No. 87–7380, 1988 WL 75983 (E.D.Pa. July 6, 1988) (Green, J.) (court "inclined" to hold in favor of private cause of action, but reserves judgment).

The weight of authority alone suggests strongly that there is no private cause of action. However, the cases holding that no such cause of action exists differ in approach. One line, typified by *Drake*, comes to that conclusion by focusing on the difference between interpretative and substantive[3] rules, holding that the reporting rules are interpretative and hence not capable of violation (put otherwise, that violation of the interpretative rules is really violation of the statute they interpret, which does not create a private cause of action). The courts in *Kloepfer, Benitez–Allende, Copley, Ekx, Sara Lee, Crouse, O'Connor, DesLauriers, Kukulka, Kahn,* and *Morris* have adopted this approach. The other, typified by *Zepik*, states instead (or, at times, in addition) that the chain of causation needed to proceed from failure to report to injury is too attenuated to survive the statute's requirement that private causes of action only arise when an injury occurs "by reason of" the violation of a rule. This view has been adopted by the *Kelsey, Martin,* and *Howard* courts; in addition, the *Brown* court, though holding *Drake* incorrect, found no causation.

---

**2.** It should be noted that the decisions in *Hughes, Wilson,* and *Payne* have been superseded by contrary Court of Appeals decisions.

**3.** Some sources refer to substantive rules as legislative. *See, e.g., New Jersey v. Department of Health and Human Servs.*, 670 F.2d 1262, 1281 (3d Cir.1981); 2 K. Davis, *Administrative Law* § 7.8 (1979).

*Brown,* 724 F.Supp. at 48–49. In part because of this split in authority, and in part because our Court of Appeals has not ruled on the issue and because no judge in this district has ruled definitively on it, I shall discuss both arguments.

## A. Nature of the Reporting Rules

For this court to hold that there is no private cause of action for the reasons stated in *Drake* and its relations, this court must make two distinct findings. First, it must find that the distinction between substantive and interpretative rules matters; if section 23(b) of the CPSA applies to all rules, substantive and interpretative alike, then this court's analysis must stop and, at least on this ground, the motion to dismiss would have to be denied. Indeed, the courts that have held that a private cause of action exists have done just that. *See, e.g., Hughes,* 627 F.Supp. at 1240; *Payne,* 578 F.Supp. at 738; *Butcher,* 550 F.Supp. at 698–700. Second, it must find that the reporting rules are interpretative.

Before the analysis begins, it is necessary to state the difference between substantive and interpretative rules. The Administrative Procedure Act ("APA") does not contain explicit definitions of these terms; indeed, the APA defines "rule" to include both interpretative and substantive rules. 5 U.S.C. § 551(4). However, the APA contains two significant differentiations between the two types of rules. The notice and comment requirements of the APA do not apply "to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice ..." 5 U.S.C. § 553(b). In addition, the normal thirty-day notice before a rule takes effect is not required for "interpretative rules and statements of policy ..." 5 U.S.C. § 553(d)(2). In commenting on

these sections, the Department of Justice offered what it termed "working definitions" of these terms. Substantive rules were defined as "rules ... issued by an agency pursuant to statutory authority and which implement the statute ... Such rules have the force and effect of law." U.S. Dep't of Justice, *Attorney General's Manual on the Administrative Procedure Act* 30 n. 3 (1947).[4] In contrast, the *Manual* defined interpretative rules as "rules or statements issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Id.*

■ The difference is not merely taxonomic. Substantive rules have the force of law; courts must follow them, and may only strike them if the promulgating agency abused its discretion, exceeded its statutory authority, or otherwise failed to act legally. *Batterton v. Francis,* 432 U.S. 416, 425–26, 97 S.Ct. 2399, 2405–06, 53 L.Ed.2d 448 (1977); *Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974); 5 U.S.C. §§ 706(2)(A), (C). In contrast, interpretative rules may be enforced by courts, but are not entitled to the same degree of deference; by themselves, they are not law.[5] *General Elec. Corp. v. Gilbert,* 429 U.S. 125, 141, 97 S.Ct. 401, 410, 50 L.Ed.2d 343 (1976); *United States v. Pennsylvania Indus. Chem. Corp.,* 411 U.S. 655, 674, 93 S.Ct. 1804, 1816, 36 L.Ed.2d 567 (1973); *United States v. Walter Dunlap & Sons, Inc.,* 800 F.2d 1232, 1238 (3d Cir.1986). As the Court put it, interpretative rules:

> constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration,

---

4. The Court has observed that the *Manual* is entitled to "great weight" because the Department of Justice was heavily involved in the drafting and enacting of the APA. *Bowen v. Georgetown University Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 476, 102 L.Ed.2d 493 (1988) (Scalia, J., concurring); *see also, e.g., Chrysler Corp. v. Brown,* 441 U.S. 281, 302 n. 31, 99 S.Ct. 1705, 1717–18 n. 31, 60 L.Ed.2d 208 (1979); *Vermont Yankee Nuclear Power Corp. v. Natural Re-*

*sources Defense Council,* 435 U.S. 519, 546, 98 S.Ct. 1197, 1213, 55 L.Ed.2d 460 (1978).

5. They may, however bind the agency. The courts are split on this point. *Compare Vietnam Veterans of Am. v. Secretary of the Navy,* 843 F.2d 528, 537–38 (D.C.Cir.1988) (not binding) *with Revak v. National Mines Corp.,* 808 F.2d 996, 1002 (3d Cir.1986) (potentially binding).

the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944) (Jackson, J.); *see also General Electric,* 429 U.S. at 141–42, 97 S.Ct. at 410–11; *Daughters of Miriam Center for the Aged v. Mathews,* 590 F.2d 1250, 1258 (3d Cir. 1978). This lack of compelled deference means that courts may, if they choose, ignore interpretative rules altogether, or strike them simply because they disagree with the agency's statutory interpretation. *See, e.g., Limerick Ecology Action, Inc. v. United States Nuclear Regulatory Comm'n,* 869 F.2d 719, 736 (3d Cir.1989) ("We conclude that the NRC's Final Policy Statement is entitled to no greater deference than any other policy statement, i.e., none."). Thus, the courts treat substantive and interpretative rules quite differently when the rules are challenged. If a rule is substantive, then it must have met the APA requirements on notice and comment and effective date, as well as other legal requirements; if it has, then it must be followed. If it is interpretative, it cannot be challenged procedurally, but it may be ignored or stricken by the court relatively easily.

■ The definitions above have been cited approvingly by the Court. *Chrysler Corp. v. Brown,* 441 U.S. 281, 302 n. 31, 99 S.Ct. 1705, 1717–18 n. 31, 60 L.Ed.2d 208 (1979); *Batterton,* 432 U.S. at 425 n. 9, 97 S.Ct. at 2405 n. 9. In addition, the courts have developed more detailed guides toward distinguishing the types of rules. Our Court of Appeals has stated that " '[t]he relevant distinction between legislative and interpretative or any other nonlegislative rules is not the nature of the questions they address but the authority and intent with which they are issued and the resulting effect on the power of a court to depart from the decision embodied in the rule.' " *Cerro Metal Prods. v. Marshall,* 620 F.2d 964, 981 (3d Cir.1980) (quoting *Joseph v. United States Civil Serv. Comm'n,* 554 F.2d 1140, 1153 n. 24 (D.C.

Cir.1977)). Thus, one factor to examine is whether the agency promulgating the regulation treats it as substantive or interpretative, though this cannot be determinative. *Limerick Ecology Action,* 869 F.2d at 734; *General Motors Corp. v. Ruckelshaus,* 742 F.2d 1561, 1565 (D.C.Cir.1984) (en banc). The most important factor, as the *Cerro* court suggests, is the effect of the rule. If the rule creates new rights or duties (that is, rights or duties not explicit in the statute authorizing the regulations), then the rule is substantive. *Chrysler,* 441 U.S. at 302, 99 S.Ct. at 1717; *Ruiz,* 415 U.S. at 231–36, 94 S.Ct. at 1072–75; *Department of Health and Human Servs.,* 670 F.2d at 1281. In contrast, a rule that merely restates the statute or gives the agency's view as to the statute's meaning is interpretative. *See, e.g., American Hospital Ass'n v. Bowen,* 834 F.2d 1037, 1045–46 (D.C.Cir.1987); *Daughters of Miriam,* 590 F.2d at 1258. Although the spectrum may be "hazy," courts may look to whether the rule affords the agency discretion and whether it acts prospectively, in addition to the elements above, in making the determination. *American Hosp. Ass'n,* 834 F.2d at 1045, 1045–46; *see also, e.g., Community Nutrition Inst. v. Brock,* 818 F.2d 943, 946 (D.C.Cir.1987); *American Bus Ass'n v. United States,* 627 F.2d 525, 529 (D.C.Cir. 1980).

### 1. Does the statute recognize only substantive rules?

The first matter to resolve, given this structure, is whether the statute creates a private cause of action for all rules, as the plaintiff suggests, or only for legislative rules, as the defendant argues. On its face, "any other rule or order" would seem to encompass *all* rules issued by the Commission, presumably including the reporting rules codified at 15 C.F.R. § 1115 (1989). The courts that have upheld a private cause of action under the CPSA have uniformly held that this is the proper reading. *See, e.g., Brown,* 724 F.Supp. at 47–48; *Swenson,* 374 N.W.2d at 699–700. In so doing, they have relied upon the APA's definition of "rule," which explicitly in-

cludes agency statements "designed to ... interpret ... law." 5 U.S.C. § 551(4). They also place great weight upon the plain meaning rule, which states that the most direct and obvious sense of a statute is the one to be adopted, absent clear legislative intent to the contrary. *See, e.g., Consumer Prods. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

However, these courts interpret the statute *in vacuo,* thus effectively converting the plain meaning rule (which, after all, is merely a guide to statutory interpretation) to a simplistic meaning rule. As Justice Cardozo observed, "the meaning of a statute is to be looked for, not in any single part, but in all the parts together and in their relation to the end in view." *Panama Refining Co. v. Ryan,* 293 U.S. 388, 439, 55 S.Ct. 241, 256, 79 L.Ed. 446 (1935) (Cardozo, J., dissenting); *see also* H. Hart & A. Sacks, *The Legal Process* 1415 (tentative ed. 1958) ("The whole context of a statute may be examined in aid of its interpretation, and should be whenever substantial doubt about its meaning exists in the interpreter's mind, or is suggested to him."). The CPSA was enacted against a rich background of administrative law, part of which draws a distinction between substantive and interpretative rules. Even the APA, whose broad definition of "rule" is relied upon by the courts finding a private cause of action, itself draws distinctions between these types of rules. 5 U.S.C. §§ 553(b), (d)(2) (notice and comment requirement and delayed effective date not applicable to interpretative rules). The courts have also drawn these distinctions when reviewing Commission actions. *GTE Sylvania,* 447 U.S. at 120, 100 S.Ct. at 2062; *United States v. Advance Mach. Co.,* 547 F.Supp. 1085, 1090 (D.Minn.1982).

This is also consistent with the statute's text. Section 23(a), it will be recalled, creates a private cause of action for the *"violation ... of a consumer product safety rule, or any other rule or order issued by the Commission ..."* 15 U.S.C. § 2072(a) (emphasis added). The word violation requires that the rule be capable of violation in order for a private party to enforce it;

that is, that the rule not be purely interpretative. The reporting rules, as will be shown at greater length below, are almost wholly restatements of the statute or suggestions to those affected by the CPSA, drawn from the Commission's own guidelines and standard practices. The Commission thus need not have issued reporting rules at all, save for those that set out housekeeping requirements. It could instead simply act according to its private guidelines, leaving manufacturers and retailers to divine from the statute when and what they must report. It would be curious to hold out as positive law rules that are not necessary to the enforcement of the statute. As the *Drake* court observed, "[b]eing in nature hortatory, rather than mandatory, interpret[at]ive rules never can be violated." *Drake,* 797 F.2d at 607; *see also, e.g., General Electric,* 429 U.S. at 141, 97 S.Ct. at 411; *Skidmore,* 323 U.S. at 140, 65 S.Ct. at 164; *Cerro Metal Prods.,* 620 F.2d at 981–82; 2 K. Davis, *Administrative Law* § 7:8, at 39–41 (2d ed. 1979); 3 B. Mezines, J. Stein & J. Gruff, *Administrative Law* § 15.07[3] (1988 & Supp.1990). This reading is followed in the leading commentary on these rules. Note, *Private Causes of Action Under the Reporting Rules of the Consumer Product Safety Act,* 70 Minn.L.Rev. 955, 973 (1986).

The same conclusion arises when a different statutory word is emphasized. The section that plaintiff argues provides him with a private cause of action only supplies one for violations of *rules;* a violation of the statute is thus not a basis for a private cause of action. This implicitly invokes the substantive/interpretative dichotomy, because violations of the principles set out in interpretative rules are in truth violations of the statutes undergirding the rules; if the rules were not promulgated pursuant to delegated authority, they can carry no independent force. *See, e.g., Batterton,* 432 U.S. at 424–26, 97 S.Ct. at 2404–06; J. O'Reilly, *Administrative Rulemaking* § 3.08 (1983). Such a distinction is consistent with the structure of the statute. As noted above, other parts of the CPSA allow the agency to enforce the statute proper.

For example, § 12(a) authorizes the Commission to file actions to seize imminently dangerous products. 15 U.S.C. § 2061(a). The Commission may also assess penalties for violations of, among other sections, 15(b). 15 U.S.C. § 2069(a)(1). Finally, it may bring actions to enforce the CPSA, both civilly and criminally, in federal court. 15 U.S.C. §§ 2076(b)(7)(A), (B). There is hence no threat of unenforceability if private causes of action may only be brought for the violation of rules. The statutory scheme is thus not offended by reading it in light of the substantive/interpretative distinction.

The legislative history sheds little light on this matter. The original Senate bill permitted private causes of action for a "violation of a consumer product safety standard, regulation, or order ..." S. 3419, 92d Cong., 2d Sess. § 316(d)(2), 118 Cong. Rec. 21,911 (1972). This may be parsed either to cover regulations and orders generally or to cover only regulations and orders pertaining to consumer product safety. The House counterpart was more restrictive, limiting the cause of action to failure to comply with consumer product safety rules or with orders made after substantial product hazard determinations. H.R. 15,003, 92d Cong., 2d Sess. §§ 23(a)(1), (2), 118 Cong.Rec. 31,399 (1972). As one sponsor observed, "consumer suits are permitted to compel compliance with safety rules and certain Commission orders." 118 Cong.Rec. 31,381 (1972) (statement of Rep. Broyhill). This language was changed by an amendment which created a private cause of action for the "violation of a consumer product safety standard, regulation, or order ...," language which tracks that of the Senate bill. 118 Cong.Rec. 31,402 (1972). The proposal was made as part of a plan to *restrict* the scope of the private cause of action, though, as it added a minimum jurisdictional amount. It would be odd if, without comment, the House in fact had expanded the private cause of action greatly even as it purported to shrink it. Significantly, an opponent of the jurisdictional amount (and advocate of the statute) noted that the substantive scope of the private cause of action remained narrow.

118 Cong.Rec. 31,403 (1972) (statement of Rep. Eckhardt) ("Under this act it would be necessary to show that a rule had been issued with respect to the particular product involved, or that an order had been granted which had been violated."). In the main, then, the earlier forms of the statute point toward a restricted reading of the private cause of action section.

The final version is, however, more broadly phrased. The change attracted no comment in the legislative history. The Conference Report that accompanied the final form of the bill did not even mention the private cause of action section. H.R. Conf.Rep. No. 1593, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin.N. 4573, 4596 (1972). The only reference in the debates stated that the section allowed "an individual who has been injured by a consumer product that has been produced by a manufacturer who knows that the product does not meet an applicable product safety standard to sue such manufacturer in Federal court ..." 118 Cong.Rec. 36,198 (1972) (statement of Sen. Moss). This is certainly a restrictive interpretation of the section, so much so that it may not be a fair description of the intended scope. It is thus difficult to draw any significant conclusions from the legislative history, though there are indications that the changes in language were not intended to provide private causes of action extending beyond those in the original House bill. One may also conclude that Congress had some concern about the breadth of the section, as it added a minimum amount in controversy. In general, then, the history points weakly toward a narrow reading of the section.

Taking the statute in its context, both legislative and judicial, I conclude that the statute encompasses the substantive/interpretative distinction generally present in administrative law. Such legislative history as there is suggests that Congress intended to install a limited private cause of action, and the structure of the statute is consistent with this reading. It is thus necessary to examine the regula-

tions themselves to determine which class describes them better.

## 2. Are the rules substantive or interpretative?

■■■ The text and history of the regulations show that they are interpretative. A relatively minor factor, the agency's view of the regulation, cuts strongly in favor of this. The original rules were described in the *Federal Register* as "guidelines for compliance," language flavored far more by interpretation than by substance. 38 Fed.Reg. 20,902, 20,902 (1973). Likewise, the 1975 revisions referred to "policy and procedure," and carefully observed that, though it would follow a notice and comment format, "solicitation of public comment is not required by law and should not be considered as having precedential value." 40 Fed.Reg. 30,936, 30,936 (1975).[6] The 1977 proposed amendments to the regulations also refer to them as interpretative and hence effective upon final publication. 42 Fed.Reg. 46,720, 46,722 (1977). Finally, when the 1977 proposals were made official, the Commission set out at length its reasons for considering the rules interpretative. Indeed, it did so in part because of some earlier confusion among commenters as to whether the rules provided grist for remedial actions; the Commission stated specifically that the rules merely interpreted the statute, and that the Commission would act under the statute, rather than the rules, when it sought sanctions. 43 Fed.Reg. 34,988, 34,990 (1978). The Com-

mission's view is plain: these regulations are interpretative.[7]

A look at the regulations themselves bears this out. The regulations begin by stating that they are intended to set forth the Commission's interpretation of the statute. 15 C.F.R. § 1115.1 (1989). Large portions of the regulations simply restate the statute. *See, e.g.*, 15 C.F.R. §§ 1115.2 (scope of statute), 1115.21 (compulsory actions available), 1115.22 (prohibited acts) (1989). Still other sections contain purely procedural matter, which is by definition not substantive. *See, e.g.*, 15 C.F.R. §§ 1115.10 (where to report), 1115.13 (content and form of reports) (1989). What is left is the Commission's interpretation of the statute, couched in tentative language. Thus, for example, the section defining "defect" contains several examples of defects, which the Commission offers "[t]o assist subject firms in understanding the concept of defect as used in the CPSA ..." 15 C.F.R. § 1115.4 (1989). It also lists the criteria that the Commission considers when it determines whether a defect exists. *Id.* The section discussing information to be reported proceeds similarly, using examples and setting out the criteria used by the Commission. 15 C.F.R. § 1115.12 (1989). In sum, then, the regulations do not alter rights or duties; they either restate the statutory alterations or provide suggested interpretations of the statutory duties. They do not purport to proscribe conduct. In setting out the Commission's guidelines as suggestions, replete with admonitions

---

**6.** Although notice and comment proceedings are required for substantive rules and not for interpretative rules, notice and comment methods are often used to promulgate significant interpretative regulations and hence do not indicate a view that the regulations are, in fact, substantive. *See, e.g., Chemical Waste Management, Inc. v. EPA*, 869 F.2d 1526, 1534–35 (D.C. Cir.1989).

**7.** It should also be noted that section 15(b) does not authorize the Commission to promulgate rules. 15 U.S.C. § 2064(b). Consequently, rules that derive from that section can only be interpretative; substantive rules must be authorized by explicit legislative grants of power. *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 398, 60 S.Ct. 907, 914, 84 L.Ed. 1263 (1940); *Department of Health and Human Servs.*, 670

F.2d at 1281. The rules list as authority several other sections of the CPSA, though, some of which specifically authorize substantive rules. For example, section 16(b) of the CPSA allows the Commission to promulgate rules establishing what information a manufacturer or distributor must keep. 15 U.S.C. § 2065(b). Also, section 27(e) authorizes rules that require manufacturers to provide performance and technical data to the Commission. 15 U.S.C. § 2076(e). At most, however, these alternative sections give the Commission a choice of interpretative or substantive rules. They do not compel a conclusion that the Commission must have intended one sort of rule or another; accordingly, the intent of the Commission must be gleaned from the sources presented in the text above.

that decisions are made case-by-case, the rules afford the Commission almost complete discretion. *See, e.g.,* 15 C.F.R. §§ 1115.4 (defining hazard), 1115.12(f) (substantial risk of injury) (1989). Hence, they are interpretative.

### 3. Conclusion

Because the statute creates a private cause of action only for the violation of substantive rules, and because the reporting rules are interpretative, there is no private cause of action for violations of the reporting rules promulgated by the Commission. This is so from either of the vantage points above. If the statute allows private suits only when a rule is violated, then a suit may not be based on an interpretative rule: interpretative rules are not law, and hence are inviolable. From the other perspective, an interpretative rule has only the force given it by the statute it purports to interpret. Therefore, to the extent that its words may be violated, the violation is of the statute, not the rule— and the CPSA does not grant a private cause of action for statutory violations.

This line of argument is not without its difficulties, though. As the *Zepik* court pointed out, it is perhaps odd for the Commission to be able to choose whether the reporting rules may be enforced privately by dint of its ability to choose whether they are substantive or interpretative. *Zepik,* 856 F.2d at 941–42. The lack of mention in the legislative history adds to the oddity. It would be stranger, though, to expand the scope of the statute, as plaintiff urges. This court has noted that the legislative history, such as it is, is more consistent with restricting the private cause of action than with expanding it, and so this court's reading of the statute is consistent with general legislative purpose. As Judge Breyer observed:

> [T]o permit such an action would have broad substantive implications. It would mean plaintiffs could bring many (perhaps nearly all) products liability suits in

federal court and obtain attorney's fees by alleging that the manufacturer should have told the Commission about the defect. It seems unlikely Congress would have intended to bring about such an important result without even mentioning the matter.

*Benitez–Allende,* 857 F.2d at 35. This court remains persuaded that the *Drake* line of cases is correct (as, after all, was the *Zepik* court). However, as the next section makes clear, the same result may be reached through another interpretative approach.

### B. Causation

*Zepik* and related cases focus on a different portion of section 23(a) of the CPSA. The portion in question limits the scope of the section to "[a]ny person who shall sustain injury *by reason of* any knowing violation ... of a consumer product safety rule ...." 15 U.S.C. § 2072(a) (emphasis added). The question becomes whether plaintiff's injury occurred by reason of defendant's failure to report the alleged defects. Even at this stage of the litigation, it is possible to state that the answer must be no.

The legislative history, though sparse, suggests that Congress intended to retain standard concepts of causation in this section. *See* 118 Cong.Rec. 31,384 (1972) (statement of Rep. Eckhardt) ("[T]he burden would be on the plaintiff not only to show that the injury resulted, but that it was as a proximate cause of a failure of the product to conform with the consumer product standard."). The courts have interpreted this section accordingly. *Zepik,* 856 F.2d at 942–44; *Kelsey,* 848 F.2d at 42–43; *Brown,* 724 F.Supp. at 48–49. Thus, this court must determine whether standard causation analysis permits this cause of action to proceed.[8]

As one learned authority has observed, "[a]s a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of

---

**8.** The statute does not specify whether state or federal tort law would apply. *See Wahba v. H & N Prescription Center, Inc.,* 539 F.Supp. 352, 356–57 (E.D.N.Y.1982) (Weinstein, C.J.) (state law concepts should be applied). The difference is unimportant for these purposes, and so this court will employ cases from both federal courts and Pennsylvania courts.

such significance that the law is justified in imposing liability." W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts* § 41, at 264 (5th ed. 1984) [hereinafter *Prosser*]; *see also Burnside v. Abbott Laboratories*, 351 Pa. Super. 264, 274, 505 A.2d 973, 978 (1985). The courts have generally adopted the "substantial factor" approach to legal cause, in which the importance of the allegedly tortious conduct in bringing about the harm is critical. *See, e.g., Hamil v. Bashline*, 481 Pa. 256, 265, 392 A.2d 1280, 1284 (1978); Restatement of Torts (Second) § 431 (1965). But, as the Restatement makes clear, it is also necessary that the harm would not have occurred if the alleged tortfeasor had not been negligent.[9] *Hamil*, 481 Pa. at 265, 392 A.2d at 1284; Restatement of Torts (Second) § 432(1) (1965). Although "but-for" causation is not a sufficient condition for a finding of negligence (or, here, of causation), it is necessary. *See, e.g., Westinghouse Elec. Corp. v. M/V Leslie Lykes*, 734 F.2d 199, 212–14 (5th Cir.1984); *Wheatley Heights Neighborhood Coalition v. Jenna Resales Co.*, 447 F.Supp. 838, 842 (E.D.N.Y.1978); *Whitner v. Lojeski*, 437 Pa. 448, 456–58, 263 A.2d 889, 893–94 (1970); *Prosser*, § 41 at 266.

■ Though negligence is ordinarily a question of fact inappropriate for resolution at this stage (except if the complaint is grossly inadequate), whether proximate cause exists may be decided as a matter of law where the proposed chain of causation is so attenuated, so dependent upon unprovable contingencies, that the plaintiff is not within the group of individuals properly able to reach the defendant. *E.J. Stewart, Inc. v. Aitken Prods., Inc.*, 607 F.Supp. 883, 889 (E.D.Pa.1985); *Mazzagatti v. Everingham*, 512 Pa. 266, 273–74, 516 A.2d 672, 676 (1986); *Alumni Ass'n v. Sullivan*, 369 Pa.Super. 596, 601–02, 535 A.2d 1095,

1098 (1987); Restatement of Torts (Second) § 434(1)(c) (1965). This court thus must turn to the causal chain necessary to link a failure to report to a prevented accident.

For Klingler to prove that Yamaha's alleged failure to report caused an accident, he would have to show, in the words of the *Zepik* court, that:

(1) by failing to report information that "reasonably support[ed] the conclusion that" a product was defective that defendant deprived the Commission of information not already known to it; (2) if the information had been reported, the Commission would have determined that a defect existed and undertaken to counteract the defect; (3) the Commission's response would have been implemented in time to avert the injury to the plaintiff (and would have survived judicial and congressional [10] scrutiny during the period between the Commission's response and the injury); and (4) the Commission's response would have been effective in preventing the accident in question.

*Zepik*, 856 F.2d at 942–43; *see also Brown*, 724 F.Supp. at 49. This is a formidable list of necessary elements. While it might be possible to prove the first of these, the others are simply not possible to show. The Commission is given discretion in promulgating consumer product safety rules. 15 U.S.C. §§ 2056, 2058. The plaintiff therefore cannot establish that the Commission would have been obliged to set forth a proposed rule if it received information about a potential defect. The plaintiff could, in theory, supply affidavits from the pertinent Commission staff members and Commissioners that could support the second element of the chain of causation. To permit such a manner of proof, however, would do away with motions to dismiss in patently frivolous suits alleging, say, that but for some tortious conduct by the defen-

---

9. The exception to this principle comes when multiple forces could have independently caused the harm; in such cases, all such forces may be found substantial. Restatement of Torts (Second) § 432(2) (1965); *see also Sindell v. Abbott Laboratories*, 26 Cal.3d 588, 607 P.2d 924, 163 Cal.Rptr. 132 (1980) (market share liability); *Summers v. Tice*, 33 Cal.2d 80, 199 P.2d 1 (1948)

(multiple shooters liable for injury). This exception does not apply here.

10. Presumably *INS v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), has removed the legislative veto from the CPSA. 15 U.S.C. § 2083.

dant, the plaintiff would have been elected President. *See, e.g., Gordon v. Secretary of State*, 460 F.Supp. 1026 (D.N.J.1978) (alleging that if fair elections had been held, plaintiff would have been elected President; case dismissed). More seriously, any suit in which inaction by a deliberative or electoral body could be germane would, by this logic, be unsuited to resolution as a matter of law. This would be a radical and unwelcome change.

The third element is no easier to meet. As one commentator has noted, almost three years typically pass between the publication of a Notice of Proceeding and the issuance of a final consumer product safety rule. Schwartz, *The Consumer Product Safety Commission: A Flawed Product of the Consumer Decade*, 51 Geo.Wash.L. Rev. 32, 62–63 (1982). Moreover, the CPSA provides that consumer product safety rules are subject to judicial review. 15 U.S.C. § 2060. The plaintiff would thus have to show that the rule would survive judicial scrutiny, which is by no means assured. *Aqua Slide 'N' Dive Corp. v. Consumer Prod. Safety Comm'n*, 569 F.2d 831 (5th Cir.1978) (striking consumer product safety rule). More disturbingly, this court would be obliged to decide whether a nonexistent safety rule was adequately justified by the nonexistent record not presented to the Commission. Such a prodigious feat of judicial clairvoyance is beyond the skills of this court.

Finally, the fourth element is, again, not readily provable. Faced with the evidence that Yamaha would presumably have presented, the Commission could have adopted a rule that would not have prevented this accident. While it might be possible for competent experts to testify on whether any given rule would have mandated changes that would have prevented an accident, it is not possible to show what rule would have been promulgated. Here, too, the plaintiff seeks to prove the unprovable; here, too, the chain of causation snaps.

There is hence no manner of causation, in the traditional sense, that would support this cause of action. Causation has, of course, been relaxed from time to time (as,

for example, in the *Sindell* case above), and this court could perhaps do so here. *But see Burnside*, 351 Pa.Super. at 277–89, 505 A.2d at 980–86 (retaining traditional causation in market share action). The theory under which the plaintiff seeks to proceed would, however, apply just as easily to any manufacturer or distributor of all-terrain vehicles, as long as the ultimate rule would have been applicable to the Yamaha vehicle as well. This would allow plaintiffs to sue manufacturers of products that the plaintiffs had never used. Such a step would go beyond ordinary market share analysis, in which industry liability is premised upon the possibility that the plaintiff might have used or been exposed to the defendants' products. This extreme move is without explicit statutory support, and the legislative history, as noted above, indicates that traditional tort concepts apply here. I thus follow Judge Cudahy's well-reasoned opinion in *Zepik* by holding that causation analysis bars a private cause of action to enforce the reporting requirements of the CPSA. Therefore, for both of the reasons given above, Count Three of the amended complaint is dismissed.

### III. FICTITIOUS PARTIES

■ The remaining motions—a motion to dismiss the complaint as a whole and a motion to strike paragraph six of the amended complaint—are germane because the remaining counts are based on state law. If Count Three were valid, then the state law claims could be heard under this court's pendent jurisdiction, and challenges to diversity would be irrelevant. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 195–96 (3d Cir.1976). Under the circumstances, however, they must be considered.

■ The motion to dismiss is based upon the asserted presence of fictitious defendants. Yamaha maintains that diversity actions may not be maintained when unidentified parties are included, as they might destroy diversity. Similarly, the motion to strike is based on the contention

that fictitious defendants are not provided for in the Federal Rules of Civil Procedure, and hence that they may not be introduced here.

The latter argument is erroneous. As I have recently held, fictitious parties are proper under certain limited circumstances, at least until reasonable discovery permits the actual defendants to assume their places. *Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 41–42 (E.D.Pa.1990); *see also, e.g., Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 31–32 (3d Cir.1985); *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 174–75 (3d Cir.1977). The motion to strike is thus inappropriate on that basis.

■ However, there is a different reason to grant the motion to strike. Federal Rule of Civil Procedure 10(a) requires that the complaint include the names of all the parties. *Kedra v. City of Philadelphia*, 454 F.Supp. 652, 657 n. 1 (E.D.Pa.1978) (Luongo, J.). The amended complaint here contains only Yamaha. Consequently, the Does are not yet defendants in this action, and the references to them in paragraph six are immaterial and must be stricken. The motion to strike is therefore granted.

■ This moots the motion to dismiss. However, the plaintiff should be warned that Doe defendants are disfavored in diversity actions, because their citizenship is generally undetermined and thus is subject to challenge. The plaintiff, after all, must carry the burden of proving jurisdictional facts once jurisdiction is challenged, and unsupported assertions in the complaint are not adequate to meet a challenge. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63–65 & 66 n. 9 (3d Cir.1984); 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 8.10, at 8–46 to 8–47 (2d ed. 1989). Should the plaintiff seek leave to amend his complaint, he should bear in mind that he should be ready to establish jurisdiction over any Doe defendants he may name. He should also bear in mind that the amendments do not relate back to the original complaint unless the requirements of Federal Rule of Civil Procedure 15(c) are met.

An order follows.

ORDER

AND NOW, upon consideration of Defendant's Motion to Dismiss Count Three of Plaintiff's Amended Complaint, Defendant's Motion to Strike Paragraph Six of Plaintiff's Amended Complaint, and Defendant's Motion to Dismiss, and Plaintiff's Response thereto, IT IS ORDERED that:

1. Defendant's Motion to Dismiss Count Three of Plaintiff's Amended Complaint is GRANTED;

2. Defendant's Motion to Strike Paragraph Six of Plaintiff's Amended Complaint is GRANTED;

3. Defendant's Motion to Dismiss is DENIED.